## Hogg *versus* Wilkins *et al.*

1. The Statute of Frauds applies to the purchase of an equitable use in lands, as much as it does to the transfer of a legal title.

2. When one sells land of which he is already the owner, he is trustee of the legal title for the vendee until he conveys it, and the rule is the same, when a vendor makes the contract of sale in anticipation of his own purchase.

3. A trust *ex maleficio* is usually raised by the violation of some other trust previously existing.

4. A promise by a purchaser of real estate at sheriff's sale, who buys with his own money, that he will convey the purchased premises to the defendant upon the payment of a stipulated price, creates no relation but that of vendor and vendee.

5. When a purchaser of land at sheriff's sale, by false representations prevents competition in bidding, and thereby gets the land cheaper than he otherwise would, he gets no title to the land.

6. Declarations of third parties, since deceased, that they would have bid more for the land than it sold for at the Coroner's sale, if they had not been prevented by the declarations of the plaintiff, that if he got it he would let defendants have it upon being repaid his money, are not competent testimony.

ERROR to the Court of Common Pleas of *Fayette county.*

This was an action of ejectment by the plaintiff in error, against Wilkins and Blocher, for one hundred and fifty acres of land in Bullskin Township.

On the trial, plaintiff showed that defendants were in possession of the land, and followed it by the record of a judgment in favor of Morris, *sheriff,* against Blocher, Shoemaker, Taylor, and Overholt, for $6,655.06 :—*fi. fa., vend. ex.,* coroner's sale, and deed to George E. Hogg, plaintiff, March 12, 1844.

Defendants then gave the following evidence.

*Henry D. Overholt,* one of the defendants in the execution upon which the land was sold, affirmed.—After the property was levied on, I met Mr. George E. Hogg on the road, near my residence ; he asked me what I intended to do about that matter ; I told him that the property must let me out, and that there was property enough to do it ; he said he did not know; that his father George Hogg, had a mortgage on it to a large amount, and consequently the land would sell low ; he told me they were compelled to buy the land to prevent it going into other persons hands who had no interest in it ; for if persons got it, and went upon it, the property would not be worth the amount of the mortgage when the mortgage became due ; and that they would let the owners, Blocher et. al., have the property, provided they would pay them their money and interest ; that the money was worth more to them than the property ; that their object in buying would be to prevent the property from being destroyed.

After the conversation between myself and Hogg, Christian Painter came to my house to see the advertisement, when it was to be sold ; he wanted to know if there was any arrangement with any person ; that he had been looking over the lands; I told him what Hogg had said to me.

Defendants then offered to prove the declarations of Christian Painter, then deceased, going to show that he was prevented from bidding in consequence of this information, and said he would not bid. Plaintiff objected on the ground that the declarations of third persons could not be received.

The court, GILMORE, P., overruled the objection, and received the evidence.

*Abraham Overholt,* affirmed.—Sometime before the sale of this property of Blocher and Shoemaker, Mr. Hogg came to my mill

and asked me if I had a notion of buying the property, which was to be sold shortly; I said there was a judgment against my nephew, H. D. Overholt, and if that was paid, I would not be a bidder; he said there was a heavy mortgage on the land, and that the money would all have to be paid in specie; I said that was nothing to me; that I could meet it as well as any other; he then said they would be compelled to buy it to save themselves; he said, if it went into any other hands it might be destroyed, and would not be worth the mortgage when it became due; I asked him, provided they would buy it, if they would let Blocher and Shoemaker have the property, provided they satisfied the mortgage; he said they would; that his father would as soon have the money as the land; that they could do as well by the money as the land; I said, if I would buy it, I would let Blocher and Shoemaker have the property, provided they would repay me my money which I would lay out; he said they would do the same; he said the money would be hard to raise; said he was going to buy it for his father; said if they would redeem the property they should have it again; I do not know whether I would have attended the sale or not; but if he had not said this I should have been a bidder; I would have attended the sale: the property went too low entirely; the reason I did not attend the sale was in consequence of what George E. Hogg told me, that they would let Blocher and Shoemaker redeem on payment of the mortgage; I would have bid the sum necessary to save the judgment of Henry D. Overholt; my object in attending the sale was to let Henry D. Overholt out; I would have bid more money for the property.

Much corroborating testimony was given, and also proof of a tender of the money by defendants to plaintiff, in December, 1849.

The court left the determination of the agreement to the jury, and charged *inter alia* as follows:

"We think the authorities will authorize us to charge you, that if you are satisfied of the existence of such an agreement, it would be a fraud in the plaintiff to violate it, and it would be relieved from the operation of the Statute of Frauds. In all cases of fraud, and where transactions have been conducted *mala fide*, there is a resulting trust, by operation of law; but there must be something more than is implied from a mere violation of a parol agreement; unless there is, equity will not deem the purchaser to be a trustee. But where a purchaser professes that he will buy, or says he is buying for the owner, and by reason of these declarations others do not bid, and he thereby gets the property at a reduced price, less than he otherwise would have been compelled to pay, he will be treated as a trustee *ex maleficio;* and this will be the case, although he may not contemplate a violation of his agree-

ment until after the sale ; the repudiation being, in fact, the fraud. But in order to establish a resulting trust on this basis, the defendant must satisfy you of two things—first, that there was such an engagement ; second, that in consequence thereof, bidders who would have raised the price of the property beyond the amount for which it sold, did not attend the sale, and that the plaintiff profited in his purchase by these representations; that is, that he bought the land for a sum less than he otherwise could have done." The jury found for defendants. The charge of the court, and admitting in evidence the declarations of Christian Painter, deceased, are the errors assigned.

*Hepburn Howell* and *Fuller*, for plaintiff in error, referred to *Peebles* v. *Reading*, 8 S. & R. 492 ; 2 W. C. R. 397 ; *Graham* v. *Donaldson*, 5 W. 452 ; *Tritt* v. *Crotzer*, 1 Har. 451 ; *Blyholder* v. *Gibson*, 6 Har. 137 ; *Harris* v. *O'Conner*, 10 W. 317 ; *Moore* v. *Small*, 7 Har. 468 ; *Robertson* v. *Robertson*, 9 W. 42 ; 4 W. & S. 150 ; 1 Hen. & Munf. 424 ; *Warden* v. *Tainter*, 4 W. 287 ; *Magaw* v. *Lothrop*, 4 W. & S. 321 ; *Hanna* v. *Stewart*, 6 W. 489 ; Story on Agency, 134.

————, for defendants in error, referred to *Lloyd* v. *Spittle*, 2 Atk. 148 ; *Peebles* v. *Reading*, 8 S. & R. 484 ; *Brown* v. *Dysinger*, 1 R. 40 ; *Walter* y. *Gernant*, 1 H. 515 ; *Jackson* v. *Sommerville*, 2 H. 370 ; 4 Cowen, 743.

The opinion of the court was delivered November 2, 1854, by

BLACK, J.—The land in dispute was sold at coroner's sale as the property of Blocher and Shoemaker, and bought by George E. Hogg, the present plaintiff, who claims it now under his deed. It is alleged, on the other hand, that Hogg agreed to buy it and hold it for Shoemaker and Blocher, and that his declarations to that effect prevented other persons from bidding, in consequence of which he got it at an under-price. There is no legal evidence of a contract on the part of Hogg to hold the land for the use of Blocher and Shoemaker. The allegation rests on a loose declaration made by Hogg to a witness when the other parties were not present, and it was without specification of terms or condition. This would be insufficient even to establish a parol sale partly executed. The Statute of Frauds applies to the purchase of an equitable use in lands as much as it does to the transfer of a legal title. When one sells land, of which he is already the owner, he is the trustee of the legal title for the vendee until he conveys it; but the execution of the trust cannot be enforced unless the contract be in writing. In reason and in law the rule must be the same where a vendor makes the contract of sale in anticipation of his own purchase. It can make no odds whether the intended purchase is to be made at a judicial or a private sale;

[Hogg *v.* Wilkins et al.]

and if it be the former, it is equally indifferent whether the parol vendee be the defendant in the execution or a stranger. In any case, it is simply an agreement for the sale of lands, which, by the statute, must be in writing, or else it will give no title. If the mere violation of such a contract were a fraud, which would take it out of the statute, then the statute would be a nullity. Let it be understood, however, that we speak this only of trusts based on contracts. There are other species of trusts which may be established by parol.

Neither is there anything in this case which, to our eye, has the look of a trust *ex maleficio.* Such trusts are usually raised by the violation of some other trust previously existing: as where an attorney buys in an outstanding title, about which he has been consulted, over the head of his client; or where a guardian, executor, or other person invested with a fiduciary character, abuses the confidence reposed in him, by taking and claiming for himself an estate which he ought to have protected for the benefit of another. But no such relations appear to have existed between these parties. If Hogg had been the agent of Blocher and Shoemaker, or (perhaps) if it could be shown that he promised to buy for them, and thereby fraudulently prevented them from getting the land in some other way, he might be compelled to convey upon being refunded the sum he paid. But the case does not seem capable of being put on this ground. The utmost assertion that the evidence allows anybody to make is, that he bought with his own money, as he had a right to do, and promised that he would convey to the defendants in the execution at a future time, on the payment of a stipulated price. This, as we have already said, created no other relation than that of vendor and vendee.

The whole case is a much simpler one than the counsel of either party seem to have thought it. There is but one point in it, and that is whether the purchase was honest or not. Here the plaintiff encounters serious difficulty. It is alleged, (and the allegation is not without evidence to support it,) that he declared his intention to purchase and hold for the defendants until they could redeem it—that he fraudulently made this declaration to persons who intended to be his competitors at the sale, whereby he kept them away, and so got the land at a price considerably less than it would have sold for if his conduct had been fair. If he did this thing, he has no interest or right whatsoever in the land; his purchase was entirely void; the title remains where it was before the sale; he does not hold as trustee, for he does not hold at all. The law has always been so ruled, and in one very recent case, not yet reported, the subject was carefully considered. It is not necessary to repeat the reasons and the authorities on which the rule is founded.

[Hogg v. Wilkins et al.]

If there was a contract such as Mr. Hogg is supposed to have mentioned in the declarations imputed to him by the witnesses; if he intended at the time to perform his part of it; and if he spoke of it with no design but to inform his neighbor of an existing fact, then he was guilty of no fraud which can hurt his title. If he subsequently changed his mind, and determined to disregard his promise, he is liable to respond in damages for his breach of faith; but it does not defeat his right to the land, because the title itself is not brought in contact with any fraudulent practice. If, on the other hand, he never made such a promise to the defendants, or made it without intending to keep it, it is difficult to assign any motive but a bad one for telling it to a bidder, who is kept away from the sale by hearing it. Hogg now denies that there was any contract, understanding, or promise at all. If his denial be true, it puts him into the worst position his opponents can desire. But they themselves, on the contrary, assert that his statement was truth. If they are to be believed, Hogg is innocent of any falsehood, and innocent, it may be, of any design to use the truth for a foul purpose. It is the interest of both parties to change sides on this question.

To avoid misconstruction, it may be necessary, at the risk of repetition, to say that Hogg's title can only be impugned by proof: (1), that he falsely declared his purpose to buy the land for Shoemaker and Blocher, upon their refunding to him the purchase-money, with interest; (2), that this declaration was made with the fraudulent design to prevent or diminish competition by persons who might be bidders; and, (3), that by this means he got the land at a price less than its value, and less than it would have brought at a fair sale. If this be established to the satisfaction of a jury, he has no shade of a claim either in law or equity. Of course we *give no opinion upon the weight of the evidence.*

It is no matter about the tender. If Hogg's fraud be proved, there is an end of his title, and the defendants are not bound to reimburse him what he expended in the effort to injure them. It is all or nothing with both parties.

The declarations of George Hogg, the plaintiff's father, were immaterial, for they related principally to the tender. What he said, tending to show that there was an agreement before the sale, to purchase for Blocher and Shoemaker, is certainly not in favor of the defendants, because, as far as it goes, it takes away the bad ingredient of falsehood from George E. Hogg's statement on that subject to the Overholts. In every other view, it is wholly unimportant what were the relations of the plaintiff with his father. George E. Hogg became the purchaser, and has the coroner's deed in his own name. If he got it by a fraud, it is worthless to him and everybody else. If he got it honestly, it is

[Murphy et al. *v.* Springer et al.]

none of the defendants' business whether George Hogg's repre-sentatives have an interest in it or not.

The declarations of Stauffer and Painter, made to Overholt, come very near to the line which divides spoken acts from hear-say. After some doubt and hesitation, a majority of this court have reached the conclusion that those declarations were not admissible. It is not worth while to discuss the subject further than to say, that the present judgment does not in the least impugn the correctness of the decision in *Walter* v. *Gernant*, (1 Harris, 515.)

Judgment reversed, and *venire facias de novo* awarded.