Sew all, J.
The decision, now to be pronounced in this cause, is upon the motion for a new trial. The question which has neon considered in this view of the case, is the same which arises upon the demurrer to the rejoinder of the defendants; and the arguments at the bar were applied, with the same purpose, to the issue in law, and to the state of the evidence upon the issue in fact. The resolve, or legislative act, pleaded as an estoppel in the rejoinder, was re *169 garded as conclusive evidence, or as having the effect of an estoppel or grant in the decision to which the attorney-general excepts. And we have no doubt that the resolve in question must have the same effect, in whichever form it is exhibited. If conclusive in its legal operation, the verdict taken for the defendants must be confirmed ; and the issue in law will be also decided against the commonwealth. (5)
The resolve of March 8, 1787, has all the sanctions which, by any usage, or by the Constitution, are requisite to an act of the legislature of the commonwealth. The misnomer at the head of it is hardly to be regarded as warranting a serious objection, although properly mentioned, as a mark of haste and inconsiderateness in the enactment. The legislature thereby resolve, “ that the Twenty-Mile Falls in Androscoggin River, being about twenty miles from Brunswick Great Falls, &c., be and they hereby are considered the uppermost falls, called the uppermost great falls in Androscoggin River, referred to in the deed from Warrumbee and six other Indian saga-mores, and executed July 7,1684.” The defendants, in their plea in bar, rely on that deed, and a supposed confirmation thereof, by the legislature of the Province of Massachusetts Bay, made to * Thomas Hutchinson and others in the year 1715, from [* 160 J whom the defendants claim and deduce their title. The same deed and confirmation are stated to have been exhibited in evidence at the trial, where the verdict was rendered for the defendants.
The resolve of 1787 is to be examined in this connection: the reference is essential to its meaning and purport, and is equivalent to a recital of the deed itself. ' From this it is manifest that the uppermost falls in Androscoggin River is a station, by which the extent of the grant and title, claimed under the said Indian deed, is to be ascertained, at least in one part of it. For, after the recital of a contract with Thomas Purchase and Nicholas Shapleigh, in which certain lands and islands, particularly named or described, were engaged to them, and mentioning that their relicts and heirs, having reserved accommodations for their several families, sold the remainder of the aforesaid lands and islands to Bichard Wharton, in confirmation of his title and propriety, Warrumbee and the other Indians grant and confirm to him “ all the aforesaid lands from the uppermost part of Androscoggin Falls, four miles westward, and so down to Maquoit.” In the recital of the bargain to Purchase the same boundary is mentioned in these words: “ all the lands lying four miles westward from the uppermost falls in said Androscoggin *170 River to Maquoit in. Casco Bay; ” and, in a subsequent part of the same deed, where another tract is likewise confirmed to Wharton, this is described with a reference to the same station, which is there mentioned in these words: “ all the lands lying five miles above the uppermost of the said Androscoggin Falls.” The legislature, with an especial reference to this deed, have declared what is, and what shall be considered, this station, — so important in ascertaining the boundaries of the tracts of land, which the defendants claim under that deed.
In the further resolution, which is part of the same legislative act, it is indeed recited, that the boundaries of the Pejep[*161 ] scut Company have not been ascertained. This is * prefatory to the direction therein given to the committee on the subject of the unappropriated lands in the counties of Lincoln and Cumberland, to restrain them from locating or disposing of any lands lying upon Androscoggin River, &c., to the southward of the south line of Bakerstoion, bounded at the said great falls in Androscoggin River; that is, to ihe southward of a line determined by the station which the preceding resolve ascertains. This may be considered as an immediate application of the former resolve to the title and claim of the Pejepscut proprietors. And as to what is said of their boundaries, the two resolves, forming one act, are to receive a consistent construction, if that is practicable; and it certainly is, if we understand by boundaries the lines and limits which are to be settled by admeasurements from this station, assumed and fixed by the legislature ; or if we understand by ascertained a location by monuments, or by other stations, to be determined by actual surveys. The station is conceded and fixed, according to which their boundaries are to be ascertained by admeasurements and monuments.
Either, then, as expressing an opinion, as confirming a grant, or as providing a rule to be observed in subsequent inquiries,-the resolve in question locates the uppermost falls in Androscoggin River at the falls called the Twenty-Mile Falls, about twenty miles above Brunsivick Falls; and this with an especial reference to the title and claim of the defendants summoned on this information.
The present process is contradictory to this legislative act, in whatever light it may be regarded: in this information, the territory extending westwardly from the Androscoggin River, between the Twenty-Mile Falls and the Brunswick Falls, is demanded as the fee and right of the commonwealth ; and the entry of the defendants thereon is alleged to be unlawful. They rely, in answering this information, on their title derived to them under the Indian deed.
The title is not questioned, but only the extent of the [*162] territory * claimed under it; and the attorney-genera *171 avers, and offers to prove, that the place of the uppermost falls is not at the TwentyrMile Falls, but at the Brunswick Falls. Against that averment and evidence, the defendants show the legislative act or resolve of March, 1787. In that the Tiventy-Mile Falls, and the Uppermost Falls in Androscoggin River, are declared to be. two names for the same place; and the legislature implicitly recog nize the claim, if not the title, of the Pejepscut proprietors, to an extent of territory determined in some respect by that station, which is explicitly stated to be about twenty miles above the Brunswick Falls.
We think (Justice Thatcher and Justice Parker concurring in the decision) that the legislative act, brought in question on this information as a matter of evidence, and on the other informations in the pleadings submitted by the demurrers in law, is conclusive against the demand in the name of the commonwealth.
Of the obvious construction and import of these resolves, there can be no question. The legislature did not restrict themselves to intimate an opinion or apprehension, by which the committee for the disposal of eastern lands were to be directed, as the attorney-general contended. This interpretation, and limited application of the resolves, the first particularly, is prevented by the style and manner in which the whole is expressed. The legislature resolve, not only what is, but what shall be, considered by virtue of their act; thus employing their authority to remove doubts which might exist upon the subject thereby determined.
An act of this kind, directly applicable to the rights and claims of individuals, and explicitly referring to them, has the effect of a confirmation or grant, or of a private statute for their direction and relief. A legislative decision, in such case, may not be conclusive upon the individuals concerned ; supposing it rejected by them for good cause, or that an adverse claim should be afterwards maintained, upon further evidence than the legislature may have had to influence * their decision. And it might be [ * 163 ] competent for the legislature, when their decision had not been accepted, or discovering any mistake or deception, to avoid their grant, or to annul their decision, by repealing the legal provision which they had enacted.
In the case at bar, however, there is no averment, or evidence offered, of any rejection by the defendants of the provision made for them by the legislature. Their acceptance of it, their concurrence as virtually parties to it, may be presumed, until an express dissent is proved ; and their pleading, and relying upon it in these proceedings, render the act conclusive upon them. And we may add, that the act has not been repealed; and in directing and authorizing in-formations against these defendants, to bring into question their title *172 in the lands demanded, other motives are avowed than a disposition, on the part of the legislature, to avoid their act of March, 1787 Evidence of the kind thereby established must be regarded as of too high a nature to be contradicted by other proof, particularly when offered in the name of the party, high and respectable as it is, by and for whom the former declaration and act, still remaining in force, had been made. Of a common person we should say, Allegans contraria non est audiendus. (6)
Upon the whole, judgment for the defendants, according to the verdict found for them, is to be rendered on this information, and a new trial is not granted.
Note. — In the counties of Kennebeck and Lincoln, where similar informations were filed, and the same question arose upon the demurrers by the attorney-general to the rejoinders of the defendants, the rejoinders were'adjudged good.
ADDITIONAL NOTE
[Enfield vs. Permit, 5 N. H. 280, acc — F. H.]

 2 Lord Rayrn 1051

 4 Inst. 273 — 1 Inst. 652. — Hargrave's note, 307