## PROPRIETORS OF MILLS ON MONATIQUOT RIVER & others *vs.* COMMONWEALTH.

Norfolk.   January 24, 25, 1895. — September 6, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Taking of Land and Rights therein by Metropolitan Park Commission — Rights of State as Owner — Effect of Taking on Water Rights — Corporation — Eminent Domain — Statute.*

The Commonwealth, as owner in fee, after the taking by the Metropolitan Park Commission, under St. 1893, c. 407, § 4, of land and rights in land, including ponds and streams of water within the limits of such land, has the rights which belong to a private owner of land and of ponds and streams on the land.

The taking by the Metropolitan Park Commission, under St. 1893, c. 407, § 4, of land and rights in land, including streams of water within the limits of such land, does not take or impair the water rights of those persons who own land not taken, but to or through which the streams of water flow from the land so taken, and such persons have no foundation for a petition for an assessment of damages under § 7.

The St. 1818, c. 35, incorporating the proprietors of mills on a river, and authorizing them to make reserves of water in certain great ponds, to erect suitable dams for the purpose of raising the water in the ponds, to lower the outlets of the ponds, and to draw off the waters from the ponds, did not confer upon the corporation the right of eminent domain.

A statute incorporated the proprietors of mills on a river, and authorized them to make reserves of water in certain great ponds, to erect suitable dams for the purpose of raising the water in the ponds, to lower the outlets of the ponds, and to draw off the waters from the ponds. Before the corporation had exercised the powers given by the statute as to one of the ponds, the land at the outlet and around the pond, which was never owned by the corporation, was taken by the Metropolitan Park Commission under St. 1893, c. 407, § 4. *Held,* that the corporation, by the statute creating it, acquired no rights of property in the pond, and could not maintain a petition for an assessment of damages under St. 1893, c. 407, § 7.

PETITION to the Superior Court, under St. 1893, c. 407, § 7, for an assessment of damages for the taking by the Metropolitan Park Commission, under § 4, of certain land and rights therein. The respondent demurred to the petition, and moved that the same be dismissed. *Mason,* C. J. sustained the demurrer, and dismissed the petition, and the petitioners appealed to this court.   The facts appear in the opinion.

The case was argued at the bar in January, 1895, and afterwards was submitted on the briefs to all the judges.

*E. C. Bumpus*, (*R. F. Simes* with him,) for the petitioners.

*F. Rackemann*, (*F. V. Balch & J. D. Colt* with him,) for the Commonwealth.

FIELD, C. J.   By St. 1893, c. 407, § 4, the board of Metropolitan Park Commissioners is authorized " to take, in fee or otherwise, in the name and for the benefit of the Commonwealth, by purchase, gift, devise, or eminent domain, lands and rights in land for public open spaces within said district, or to take bonds for the conveyance thereof; and to preserve and care for such public reservations," etc.   By § 7, " said board shall estimate and determine as near as may be all damages sustained by any person or corporation by the taking of land, or any right therein, under this act; but any one aggrieved by such determination of the board may have such damages assessed by a jury of the Superior Court, in the same manner as is provided by law with respect to damages sustained by reason of the laying out of ways."   See St. 1894, c. 288.   The petition in the present case alleges that on January 5, 1894, the board, acting under the statute, duly took certain parcels of land and rights in land, which are situated in the town of Milton and in the city of Quincy, and are definitely described in the taking, and which included Houghton's Pond and the brook which is the outlet of the pond, and which empties into Blue Hill River, one of the tributaries of Monatiquot River.   Houghton's Pond is a great pond of the area of about twenty-five acres, and Blue Hill River empties into Monatiquot River above the mill sites of those of the petitioners, who own or occupy mill sites on Monatiquot River.   The petitioners are the corporation of the Proprietors of Mills on Monatiquot River, which does not maintain mills on the river, and certain persons and corporations which own or occupy mills on the river; and it is alleged that these last and their predecessors in title "for more than twenty years prior to December 29, 1893, have had the use and enjoyment of Houghton's Pond at said privileges, as it has flowed from said pond down into the said river, and to and past their respective privileges."   All of these owners or occupants of mills but one are members of the corporation of the Proprietors of Mills on Monati-

quot River. The lands taken by the board at the time of the taking were not owned, and never had been owned, by any of the petitioners, and there has been no actual diversion of the waters of Houghton's Pond, or of its outlet from Monatiquot River.

The Commonwealth, waiving "all objection on the ground of the joinder of several petitioners in the single petition," demurred, on the ground that the petition does not state a case which entitles the petitioners, or any of them, to damages.

The claims of the owners or occupants of mill privileges are made, we think, upon a mistaken view of the effect of the taking by the board. Land and rights in land have been taken, and this includes ponds and streams of water within the limits of the land taken, but no right is given to divert running water from the channels in which it naturally flows. The Commonwealth, as owner in fee after the taking, has, we think, the rights which belong to a private owner of land and of ponds and streams on the land. The Commonwealth was the owner of the great pond before the taking, and its rights to control the waters of this pond are either the same as they were before the taking, or have been made somewhat less by the taking. The land has been taken for and the pond has been taken for or dedicated to the purposes of the statute, which are "to acquire, maintain, and make available to the inhabitants of said district open spaces for exercise and recreation." These are called in the act "public open spaces," and "public reservations." There is nothing in the act which indicates that the board may take or impair the water rights of those persons who own land not taken, but to or through which streams of water flow from the land taken. The Commonwealth, succeeding to the title of private owners, acting through the board of commissioners, may make such reasonable use of the waters on the land taken as the private owners before the taking lawfully could have made without liability to the owners of land not taken, but to or through whose land these waters flow. Whether the Commonwealth, as owner, has greater rights in the waters of the great pond before they issue from the pond need not now be considered. Whatever rights the owners of mill sites had, before the taking, to have the waters of Houghton's Pond and of its

outlet flow into Blue Hill River, and thence into Monatiquot River past their mills, they have now.    The board has not attempted to take any of these rights.

The claim of the Proprietors of Mills on Monatiquot River is a peculiar one.   They were incorporated by an act approved June 12, 1818, being St. 1818, c. 35.   This act was considered in *Proprietors of Mills* v. *Randolph*, 157 Mass. 345.   That case was a petition for the assessment of damages for the taking of all the waters of Great Pond, so called, under St. 1885, c. 217, for the purpose of supplying the inhabitants of Braintree, Randolph, and Holbrook with water.   There it appeared that the corporation of the Proprietors of Mills on Monatiquot River " owned a dam which held up and regulated the waters of Great Pond, and certain land and flowage rights in connection therewith, at or near the border of said pond, which dam and land and flowage rights, acquired by and belonging to the said corporation, were taken by the respondents under said act of 1885," etc., and it was held that, under St. 1885, c. 217, the corporation " was entitled to recover the market value of its dam, land, and flowage rights which were taken, as property distinct from the right to use the water of the river, which belonged to the mill-owners on the stream, and that the mill-owners could also recover for the injury to their estates in being deprived of the use of a part of the water of the stream by the taking of the respondents."

By the act of incorporation the Proprietors of Mills on Monatiquot River were given authority to make reserves of water in Houghton's Pond, Cranberry Pond, Little Pond, and Great Pond, and to erect suitable dams at proper places for the purpose of raising the water in said ponds " as high as its original bounds," and " to lower the outlets of said ponds, and to draw off such portions of said waters from any of said ponds, in such quantities, and at such times," as the proprietors or a major part of them should judge best.   It appears by the petition that the corporation, before the year 1890, had exercised its powers, so far as concerned Great and Little Ponds, so called, being both great ponds, and had used the waters of these ponds as reserved waters, but that about the year 1890 all of the waters of these ponds were taken under the right of eminent domain for the

purposes of supplying the inhabitants of certain towns with water. The corporation had not exercised its rights under its charter with reference to Houghton's Pond because, as is alleged, until the waters of Great and Little Ponds had been taken, it did not need to make a reserve of the waters of Houghton's Pond. These waters flowed, as they had always flowed, through the natural outlet of the pond, and formed a part of the waters which flowed through the channel of Monatiquot River, past the mills of the other petitioners.

After the diversion of the waters of Great and Little Ponds from the Monatiquot River, there was need of new reserves of water, and the petition alleges as follows : " The outlet of Houghton's Pond could be deepened at small expense, and a dam put there which would reserve a certain amount of water in this pond that could be used during the dry season at the said mills, and which would be of value to take the place, to some extent, of the reserved waters diverted from Great and Little Ponds. After said diversion of Great and Little Ponds, the Proprietors' Corporation had considered the question of such storing and using of the waters in Houghton's Pond, and intended to take definite proceedings relative thereto, although at the date of the action of the respondent, hereinafter set forth, no such definite proceedings had actually been taken." The claim of this petitioner then is, that it has been prevented, by the taking of land and of rights in land by the board of Metropolitan Park Commissioners, from erecting a dam and making a reserve of the waters of Houghton's Pond, and that therefore the right which the corporation had to do this has been taken from the corporation. It is, as we understand, conceded by the counsel for the Commonwealth, that since the taking the corporation of the Proprietors of Mills on Monatiquot River cannot, without the consent of the Commonwealth, lawfully erect dams, and change the outlet of Houghton's Pond, upon the land taken by the commissioners.

The act of incorporation, St. 1818, c. 35, was passed before the passage of St. 1830, c. 81, which provided that acts of incorporation thereafter passed should be liable to be amended, altered, or repealed at the pleasure of the Legislature, and there is no power expressly reserved to the Legislature in St. 1818,

c. 35, to alter, amend, or repeal the statute. Whether it is subject to the provisions of St. 1808, c. 65, § 7, we have not found it necessary to consider.

It is contended, in behalf of the Commonwealth, that the act of incorporation did not confer upon the corporation the right of eminent domain, and we think that this contention is true. There are no words that purport to grant the right to take private property, and no provision for compensation. The ponds described in the act are all great ponds. If it were necessary to take private property to exercise any of the rights and powers to make reserves of water, we think that the property must be acquired by purchase from the owners. The act in this respect is like that construed in *Thacher* v. *Dartmouth Bridge*, 18 Pick. 501.

It is suggested that the taking by the park commissioners impairs the franchise powers of the corporation. It does this, if it does it at all, by taking property of the corporation. If the corporation have no rights of property in the waters of Houghton's Pond, the taking of these waters has not taken anything from the corporation, although there may be less property left upon which, without the further consent of the Commonwealth, the powers of the corporation might be exercised. If a corporation were empowered to erect and maintain dwelling-houses anywhere within the city of Boston, a taking of land in Boston which was not the property of the corporation for the purpose of making a public park upon which dwelling-houses could not be built, would not be a taking of any franchises or property of the corporation, although the quantity of land on which the corporation might erect dwelling-houses would be less after the taking than before. See *Boston Water Power Co.* v. *Boston & Worcester Railroad*, 23 Pick. 360, 395.

The question then is whether the Commonwealth by the act of incorporation granted to the corporation any rights of property with reference to the waters of Houghton's Pond which have been taken by the park commissioners. In *Proprietors of Mills* v. *Braintree Water Supply Co.* 149 Mass. 478, the plaintiff had built and maintained a dam at the outlet of Little Pond, so called, and had raised the water of the pond to high-water mark, making a valuable reserve of water in the pond of

about one hundred and ten million gallons.   It was contended by the defendant that the plaintiff had at most only a revocable license to use and enjoy the waters of the pond, which the Commonwealth might terminate at its pleasure.   The court in that case found it unnecessary to decide the question.

In the present case, there never has been any exercise by the corporation of its powers with reference to the waters of Houghton's Pond, and the corporation never has had any possession or control of them before they became a part of the waters of Monatiquot River.   The argument is, that the Commonwealth owned the waters of Houghton's Pond, and by the act of incorporation granted to the corporation rights of property in them, which became vested, and which have not been lost by non-user, and which could not be taken away by the Commonwealth except for a public purpose, and then only by paying reasonable compensation.   The act gives to the corporation " full power, liberty, and authority to make the reserves of water wished by them," etc., and this relates to the powers of the corporation ; and the proprietors are " authorized and empowered " to erect suitable dams, lower the outlets of said ponds, and draw off the waters, etc., and this at least implies a permission to do these things, so far as the Commonwealth could give permission.   This charter seems to a majority of the court to resemble, with respect to the grant of powers, that of the Watuppa Reservoir Company, which was considered in *Watuppa Reservoir Co.* v. *Fall River*, 147 Mass. 548, 559.   A majority of the court there said : " By its charter, this company was granted the ' power to make reserves of water in the Watuppa Ponds, so called, by erecting a dam across the outlet of said ponds, in the town of Troy, in the county of Bristol, so as to raise the water in said ponds two feet higher than the dam already erected by the Troy Cotton and Woollen Manufactory in said town of Troy, and to draw off said reserved water in such quantities, at such times, and in such manner, as they shall judge to be most for the interest of all concerned.'   St. 1826, c. 31.   We do not think that this can be construed as granting any part of the pond, or any absolute and exclusive right to use and control the waters of the pond.   It does not do this in terms or by necessary implication.   It is a familiar rule, that

grants made by the government are to be construed 'in favor of the grantor, and this is especially true when they affect the interests of the people which are held in trust by the government. The State is not presumed to grant away such rights or franchises unless it is done in clear terms, or by an implication which is strictly necessary. *Commonwealth* v. *Roxbury*, 9 Gray, 451. *Martin* v. *Waddell*, 16 Pet. 367, 411. *Susquehanna Canal Co.* v. *Wright*, 9 Watts & Serg. 9." This was a question distinct from the principal one in that case, and upon this the justices who dissented from the opinion of the majority upon the principal question said, " There is great force in the argument, that, by the acts of the corporation under its charter, the contract of the Commonwealth has become executed, and that the rights of the corporation have become vested, so that they cannot be taken away without compensation, — at least so long as the charter remains unrepealed." But no opinion was expressed by them upon the effect of that charter if the powers given to the corporation had not been exercised. That charter was expressly made subject to St. 1808, c. 65.

In the present case it must be taken that no one of the plaintiffs ever owned the land at the outlet of Houghton's Pond, or ever had acquired any right to enter upon this land for the purpose of damming up the water, or deepening the channel, or for any other purpose. The St. of 1818, c. 35, conferred no such right. All that the corporation created by that statute acquired by it was the right to do certain things as a corporation, provided it should acquire from the owners the right to use the land on the borders of the pond. This at most was a possibility. Everything depended upon the corporation acquiring, by purchase or otherwise, the right to enter upon the land at the outlet. The only right, in actual possession, which any of the plaintiffs ever had, was to have the water flow *ut currere solebat*. The owners of the land at the outlet and around the pond might sell it or give it away to whomsoever they pleased. They might have sold or given it to the park commissioners; and in that case the park commissioners would have succeeded to the rights of the former owners. But the park commissioners, instead of purchasing, have taken this land at the outlet, and all around the pond. If this taking had been

made expressly subject to all the rights which the Proprietors of Mills on Monatiquot River had, under St. 1818, c. 35, still that corporation could do nothing until it should obtain leave from the Commonwealth, as owner of the land at the outlet, to build a dam there. As against the Commonwealth, in its capacity of owner of this land, the corporation of the Proprietors of Mills on Monatiquot River has no right whatever, and the taking of the land at the outlet did no legal harm to the corporation, any more than if the Commonwealth had bought it.

We have no occasion in the present case to express any opinion upon the rights in the waters of Houghton's Pond which might have been acquired by the Proprietors of Mills on Monatiquot River if the powers given by the charter had been executed by the purchase of land, and by building a dam and actually making reserves of waters in Houghton's Pond. The powers of the corporation not having been used with reference to Houghton's Pond, the corporation must stand, if at all, upon the effect of the charter in granting rights of property in the waters of the pond. The language of the charter seems to a majority of the court that of license and permission, rather than that of a gift, grant, or conveyance of property, and they are of opinion that by the charter it was not intended to grant to the corporation irrevocable rights of property in the waters of Houghton's Pond.

*Demurrer sustained, and petition dismissed.*