SPRAGUE ADAMS, and others, *vs.* ISAAC CLAPP.

Piscataquis.    Opinion September 19, 1904.

*Real Action.—Survey and Plan.    Boundary Lines.    Conveyances.    Evidence.*

1.   Where a land surveyor was directed by the State to run out wild lands in the public domain into ranges and townships, to spot the lines and to make a return of his survey with a plan representing the lines of the ranges and townships; and enters upon the work and makes and returns to the State a plan of his survey, showing range and township lines; such plan after the surveyor's death is competent evidence (and sufficient if uncontradicted) that the township lines laid down upon the plan were actually run upon the earth's surface.

2.   The fact that after seventy-five years of lumbering operations and forest fires, no spotted trees or other indicia of one such line are found on the surface of wild land is not sufficient to overcome the evidence of the plan that the line was actually run.

3.   The fact that some streams and ponds are so delineated on the plan as to indicate they were not then actually surveyed in detail does not overcome the evidence of the plan as to lines.    The running of the line was essential to the purposes of the survey.    The course and contour of streams and ponds were incidental, not essential.

4.   While such a plan is only a picture of the survey and must give way before satisfactory evidence that it does not correctly represent the actual survey, yet if there be no such evidence the plan must be taken as a correct picture.    Hence if the plan shows a given line to have been run in a given direction and at a given distance from a given natural object, as a pond, it is evidence (and sufficient if uncontradicted) that such was the direction and position of the line run upon the earth, even though no traces are now found to correspond.

5.   In the case of two or more surveys and plans of the same tract, a conveyance of a lot or township, "as the same was surveyed by A," with the date, adopts as boundaries the lines of the lot or township as pictured on the plan of that survey, if the plan be the only existing evidence of the survey, notwithstanding the lines are differently located on the plans of the other surveys.    Even if the lines in the survey named in the conveyance were not correctly run, yet having been run and made the boundaries in the deeds of conveyance, they must stand as such despite the irregularities and inequalities thus produced.

6. The question in this case, was the location of the north and south divid-
ing line between township No. 4 on the east and township No. 5 (now
Brownville) on the west, in the 8th range north of Waldo Patent. If it
was west of Schoodic Lake the demanded land belonged to the plaintiff.
In 1794 Samuel Weston was sent by Massachusetts the then owner to run
out the tract into ranges and townships. The only evidence of his survey
was his plan on which the north and south line between these two town-
ships was laid down as west of Schoodic Lake. The subsequent convey-
ance of each township adopted the line, surveyed "by Samuel Weston in
1794." *Held;* that the plan was sufficient evidence that Samuel Weston
actually ran the line between the townships and ran it west of Schoodic
Lake, and hence that the demanded land must be adjudged to the plain-
tiff. *Held;* further, however, that the judgment in this case being based
on the evidence in this case, does not fix the dividing line between the
two townships named, for any other case between other parties, towns or
individuals.

On report. Judgment for plaintiffs.

Real action brought to recover a parcel of real estate situate on the
west shore of Schoodic Lake, Piscataquis County.

Plea, general issue.

This action came on for trial at the September term, 1902, of the
Supreme Judicial Court, in Piscataquis County. After all the evi-
dence had been taken out, the case was withdrawn from the jury and
reported to the Law Court for decision. It was stipulated "that any
exhibits that may have been offered upon either side and excluded
may be made a part of the case;" also that "all plans, chalk and
chips used at the trial are to be produced at the argument before the
Law Court," and that "upon so much of the evidence as is legally
admissible the Court is to enter such decision as the legal rights of
the parties may require."

The case sufficiently appears in the opinion.

*Henry Hudson,* for plaintiffs.

*J. B. Peaks,* for defendant.

SITTING: WISWELL, C. J., EMERY, SAVAGE, POWERS, PEA-
BODY, SPEAR, JJ.

EMERY, J. This is a real action to recover a small parcel of land
on the west shore of Schoodic Lake in Piscataquis County. The
demanded parcel is on a cape of land making easterly into the lake

between Howard Cove on the north and Berry Cove on the south, and is on the border between township No. 4 in the eighth Range of townships north of the Waldo Patent and township No. 5, now called Brownville, in the same Range next west and adjoining township No. 4. It is conceded to be wholly within the one township or the other, and if within township No. 4 to belong to the plaintiff, but if within township 5 to belong to the defendant. The main question, therefore, is whether the boundary line between the two townships was run or established by the original owner of both to the east or west of the demanded parcel.

The land in this vicinity was first surveyed and divided into Ranges and townships, at least on paper, by Samuel Weston in 1794 by direction of the Commonwealth of Massachusetts, the then proprietor. Samuel Weston under this commission admittedly ran the Range lines east and west from the Penobscot River to the line of the "Million Acre purchase" on the Kennebec. It is also conceded that on these Range lines he established bounds to mark the corners of the townships. The defendant, however, denies that Weston actually ran the north and south lines between the townships, and claims that the north and south line between townships No. 4 and No. 5 was first run at a later date (1803) by Park Holland, who was directed by the Commonwealth to divide township No. 5 into lots. A preliminary question, therefore, is whether Samuel Weston did actually run the north and south line between these two townships under his commission of 1794.

Upon turning to the instructions given Samuel Weston to "survey three ranges of townships" etc., we find the following: "All lines are to be run and well spotted, and the corners of each township marked, the Ranges to extend from east to west and to be numbered the Seventh, Eighth and Ninth Range, and the townships to be numbered in each Range and to be laid out six miles square excepting those bordering on the Penobscot River." And again: "And you are to make return of the survey with duplicate plans representing the lines of the townships, a border or margin of the adjoining lands, the rivers, streams, lakes, ponds, and the most prominent heights" etc. No field notes or other return of the survey is shown in this

case except the plan.   Upon this plan, however, are lines indicating north and south lines between the townships, including Nos. 4 and 5, as well as the east and west, or range, lines.   There are also upon the plan, lines indicating streams and the boundaries of ponds and lakes, including the lake now called Schoodic Lake.   These lines upon the plan returned by Weston, as part at least of his return of his doings under his instructions, are evidence after his death that he did run upon the surface of the earth the lines laid down on his plan.   He was sent to survey "townships" as well as Ranges.   He was instructed that "*all* lines are to be run and well spotted."   North and south lines were as essential to running out townships as were east and west lines.   He was directed to return "plans representing the lines of the townships" etc., meaning, of course, the townships and lines that he surveyed.   It is to be presumed, after his death, in the absence of evidence to the contrary, that he did what his return, his plan, shows he did.   Had he been a public officer his return would be conclusive.   He was at least a public agent employed by the government, and his return is, after his death, to be taken as sufficient evidence of what he did until overthrown by evidence to the contrary.

The defendant, however, points out some parts of the plan representing streams, outlets, etc., which later surveys have shown to be incorrect.   He urges that these errors show that Weston could not have surveyed those streams, outlets, etc., and hence his plan thus being shown to be false in these respects cannot be regarded as correct in others.   Because he may have laid down the course of some streams or assumed certain streams to be outlets, without surveying them in their full length, we do not think it follows that he did not survey or run the boundary lines of the townships shown on his plan which was the main work he was sent to do.   The boundary lines were important, essential to the purpose of his survey.   The streams, etc., were incidental, collateral.   Again, the force of the defendant's argument as to the correctness of the plan in respect to the line in question is much weakened by the fact that upon the plan the west shore of the lake, in close proximity to the line, is represented with sub-

stantial accuracy as to its contour of coves and capes, showing that it, at least, must have been actually surveyed.

The defendant further contends that no north and south line can now be found on the earth's surface in that neighborhood with marks indicating an existence as far back as 1794. There is evidence to the contrary, but conceding that no such marks can now be found, we do not think their absence, after nearly a century of lumbering operations and forest fires, overcomes or even contradicts the evidence of the plan.

Lastly on this point the defendant calls attention to a letter of Samuel Weston in the case written in 1801 after he had been sent to re-survey a township in Range 7 next south of Range 8 by reason of some mistakes in his former survey of that Range. In this letter he made some statements of what he did in his former survey in 1794. Ignoring the question of the competency of this letter as evidence, we do not find in it any statement that he did not run the north and south township lines, nor any statements from which we think such an inference can be fairly made. Two expressions only are quoted by the defendant. "I surveyed said river (the Penobscot) . . . and found where to make the corners of the townships on the Range lines." "After my brother and I had left (the river) and gone to checking off the towns." Bearing in mind that this letter was not a return of that survey of 1794, and did not purport to give any full account of it, and was not written with the least reference to township lines, we think it cannot be fairly inferred from such casual remarks that he did not do what his official return says he did do.

We, therefore, think it legally proved by the competent evidence of the plan, practically uncontradicted, that the north and south line between these two townships was actually run upon the surface of the earth by Samuel Weston in 1794. The next question is whether that line was run to the east or west of the demanded parcel. Upon this question the parties have introduced much evidence descriptive of two north and south lines now found upon the surface of the earth about half a mile apart and on either side of the demanded parcel. Each party contends that spots on trees, peculiar stones, and other indicia now found on these lines support his contention, the plaintiff

that the western of these two lines is the original line, and the defendant that the eastern line is the original line. Each stoutly controverts the contention of the other as to what these various indicia do show. It is not made absolutely certain that any of them were made or placed there by the original surveyor, Samuel Weston, in 1794, and hence they are not certainly decisive of the question. We think, however, the location of the line run by Weston can be determined sufficiently for this case by other and contemporaneous evidence apart from the indicia on these two lines.

All the actors in the survey are long since dead. On the surface of the earth are no indubitable traces of the line. In the case are no records of what was then done except the plan returned by the surveyor, Weston. We have no other contemporaneous description of the line than that pictured on the ,plan. While the survey is the thing and the plan is only the picture, yet when the thing itself has become obliterated and the only description left to us by those who were cognizant of it is a picture or plan made in the line of his duty by a contemporary charged with the duty of making a correct picture, we must assume primarily at least that the thing is correctly represented by the picture. In the absence of other evidence, this evidence of the plan must be taken as sufficient and decisive.

Turning to the plan of this survey, it clearly shows the line in question to have been run so far to the west of Schoodic Lake as to include the demanded parcel, though west of the lake yet within the limits of township No. 4 under the grant of which the plaintiff claims. Comparing the line pictured on the plan with the two parallel lines half a mile apart now found upon the earth's surface and above described, it very nearly, if not quite, fits in location the western of the two lines, that claimed by the plaintiff; while the defendant frankly admits it does not fit the eastern line, that claimed by him. As between these two lines, therefore, the western line, that claimed by the plaintiff, must be taken as the true boundary line.

The defendant introduced a survey and plan of Park Holland, who was sent in 1803, before the conveyance of the township, to divide township No. 5 into lots, and who apparently at least laid out a

tier of lots a half mile wide east of the line shown on the Weston plan of 1794, and in doing so ran a north and south line as the east line of the township No. 5. This line is practically in the same location as that now existing on the earth's surface a half mile east of that marked on the plan. When, however, the Commonwealth came in 1805 to convey township No. 5 it fixed the limits of the township conveyed, "as the same was surveyed by Samuel Weston in 1794," and not as the same was surveyed by Park Holland. The grantee, therefore, only took to the Weston line, according to the familiar rules for interpretation of deeds. The eastern tier of lots run out by Park Holland was excluded from the conveyance, being east of and beyond the Weston line.

The defendant also introduced surveys and plans by Moses Greenleaf in 1815, who made a plan of township No. 5 or Brownville. He does not appear to have been employed by the Commonwealth, but by private owners or on his own account. He placed the east line of township No. 5 (Brownville) on the line run by Park Holland in 1803, a half mile east of the Weston line and east of the demanded parcel. But this was after the conveyance of the township in 1805, and hence could not extend its eastern limits beyond the Weston line.

It appears that Moses Greenleaf also in 1816 prepared a map of Maine from various old surveys and plans, upon which map the eastern line of township No. 5 was laid down as east of the demanded parcel. The legislature of the Commonwealth in 1816 authorized the Secretary of State to contract for 1,000 copies of this map for the use of its towns and public offices, and in the resolve recited that the map was "on the whole as correct a map as could be made or was necessary." On this map also the east line of township No. 5 is shown to be so far east as to include in that township all the land, including the demanded parcel, lying West of Schoodic Lake. The defendant urges that the Commonwealth, then owning township No. 4, thereby adopted as its west line and the east line of township No. 5, the line shown upon the Greenleaf map, and thereby acknowledged the title of its grantees of No. 5 to extend east to that line. He cites in support of this proposition *Commonwealth* v. *Pejepscot Proprs.* 10 Mass. 155, and *Blaney* v. *Rice,* 20 Pick. 62.

Had the east line of township No. 5 as described in the conveyance never been run or fixed upon the earth's surface before the making of the Greenleaf Map, perhaps the doctrine of those cases would have been applicable.   In this case, however, the evidence heretofore cited shows that the line named in the conveyance had been run and fixed. The conveyance of township 5 was thereby limited to that line, and the approval of the Greenleaf Map did not extend the conveyance beyond that line.   The subsequent conveyance of township No. 4 in 1834 to the plaintiff's predecessors bounded the land conveyed "westerly by township No. 5 of the 8th Range."   This description extended the conveyance west to the Weston line run in 1794.

The defendant also introduced evidence that the grantees of township No. 5 and their grantees repeatedly conveyed lots in the eastern tier run by Park Holland, to the east of the Weston line.   While these conveyances indicate the belief of such persons as to the location of the line, they do not change the fact.   On the other hand the defendant concedes that most of the maps made after that of Greenleaf in 1816, including the Holman and Rose plan, Chace's Map of the State, and the Piscataquis County Atlas, show the line to be substantially as upon the Weston plan, and to cut off the eastern tier of lots run by Holland.

The defendant further claims that township No. 5 is made by the Weston line to be only five and a half miles wide instead of six, as it should have been.   This may show that the Weston line was run in the wrong place, but being run and made the boundary, it must stand as such.

It being established by the evidence that the survey of Samuel Weston in 1794 included the actual running of the north and south line between the two townships, and that that running was to the west of the demanded parcel, cutting it off from township No. 5, and including it in township No. 4, the judgment in this case must be for the plaintiff.   In other cases involving this same line, the evidence may of course be different, and lead to a different result.

*Judgment for the plaintiffs.   Damages assessed at one dollar.*