INHABITANTS OF STONEHAM *vs.* COMMONWEALTH.

Middlesex.    December 7, 10, 1923. — May 21, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Great Pond. Spot Pond. Stoneham.*

Upon facts found by commissioners appointed under St. 1912, c. 689, to hear evidence and report facts relating to a petition by the town of Stoneham for damages sustained by reason of the taking in 1898 of Spot Pond by the Metropolitan Water Board under St. 1895, c. 488, it was *held,* that

(1) Spot Pond always has been a great pond within the meaning of the Colony ordinance, and in 1725 was the property of the Province;

(2) The establishment of boundaries of the town of Stoneham so as to include the area of Spot Pond did not vest in the town any title to it in the absence of an express grant;

(3) Mere assertion by the town of some sort of title was not enough to clothe it with proprietary rights;

(4) Mere belief by the town of Charlestown, predecessor in title of the town of Stoneham, that it owned Spot Pond was not the foundation of a right to ownership;

(5) The act of the General Court in 1725 erecting the new town of Stoneham cannot be construed as a grant of Spot Pond to the new town and was neither in form nor substance a validation of the illegal attempt by the town of Charlestown to grant a property right in the pond which it did not own;

(6) St. 1843, c. 76, contains no mention of rights of the petitioner in Spot Pond, and the words " purchase Spot Pond " in §§ 3 and 9 have ample scope without implying title in the petitioner;

(7) The words of § 13 of St. 1867, c. 208, incorporating the Spot Pond Water Company, that nothing therein contained " should be so construed to prevent or interfere with the right of the town of Stoneham to take water from said Spot Pond for the use of the inhabitants of said town," fall far short of being a grant to the petitioner, and do not constitute a legislative declaration of an existing right;

(8) The act of a janitor of a school house of the petitioner in taking water by pipe from the pond for a time for the use of a school house affords the petitioner no title to the waters of the pond;

(9) At the time of the alleged taking, which is the basis of the petition, the petitioner had no right to take water from Spot Pond for the use of its inhabitants;

(10) An order by the Superior Court accepting the determination by the commissioners that the petitioner suffered no damage by reason of the taking of Spot Pond by the Commonwealth was affirmed; this was the equivalent of a final judgment and ended the proceeding.

A grant from the Commonwealth is to be construed strictly against the grantee and nothing will be included in it except what is granted expressly or by clear implication.

PETITION, filed on May 26, 1913, under St. 1912, c. 689, for damages alleged to have been sustained by reason of the taking on January 1, 1898, of Spot Pond by the Metropolitan Water Board under St. 1895, c. 488.

Commissioners were appointed on motion by the petitioner in accordance with the statute and they filed a report, material facts stated in which are described in the opinion. The petition was heard by *Weed,* J.

The petitioner moved that a conditional ruling or finding

by the commissioners, that the petitioner had abandoned its right to take water from Spot Pond, be reversed or corrected, that an alternative ruling or finding relative to the damages sustained by the petitioner be reversed in so far as considered a ruling or finding that the petitioner suffered no damage, and that the judge rule that the petitioner had the right to take water from said Spot Pond for the use of its inhabitants; and that with such reversals or corrections the report be accepted and judgment entered thereon for the petitioner. This motion was denied.

The respondent moved that an alternative finding of the commissioners be stricken from their report and their report as so modified be accepted; or, in the alternative, that, if not so modified, the report be recommitted for the purpose of eliminating the said alternative finding or of making further and definite report as to the nature of the right and the elements of value upon which the alternative finding was predicated. This motion was denied.

The judge ruled as a matter of law that on the acts, votes, facts and findings set out in the commissioners' report, the petitioner on January 1, 1898, the date of the taking, did not have the right to take water from Spot Pond for the use of its inhabitants; accepted the determination of the commissioners that the petitioner suffered no damage by reason of said taking, and reported the case for determination by this court upon the petition, answer and commissioners' report, and the motions and rulings thereon and the acceptance of the commissioners' determination therein set forth, with the stipulation that, if his rulings were right, the acceptance of the determination by the commissioners that the petitioner suffered no damage by reason of the taking should be confirmed; and that, if his rulings were wrong, the alternative finding and determination by the commissioners, that the damages sustained by the petitioner by reason of the taking were the sum of $188,000 and interest from January 1, 1898, should be accepted, or in either event such other order should be made as justice might require.

*J. E. Macy,* (*J. L. Bates & H. H. Richardson* with him,) for the petitioner.

*A. E. Seagrave & E. I. Smith,* for the Commonwealth.

RUGG, C.J.   This is a petition brought under the authority of St. 1912, c. 689, for damage sustained by the town of Stoneham by the taking on January 1, 1898, of Spot Pond by the Metropolitan Water Board under St. 1895, c. 488. A hearing was had before commissioners, whose determination as to damages when accepted by the court is to be final and conclusive. *Selectmen of Danvers* v. *Commonwealth,* 184 Mass. 502.   See *Brackett* v. *Commonwealth,* 223 Mass. 119.   The report of the commissioners contains a history of the title to Spot Pond and sets out the statutes, agreements, votes and conveyances with respect to the petitioner's claim of title.   The commissioners' finding was that the petitioner suffered no damage; but in the alternative that if, as matter of law on the votes, facts and findings made by them, the petitioner, at the date of the taking by the Commonwealth of Spot Pond, had the right to take water therefrom for the use of its inhabitants, then substantial damages were recoverable.

The question to be determined is whether the petitioner on January 1, 1898, had the right to draw water from the pond for municipal water supply.

Spot Pond was discovered by Governor Winthrop and others on February 7, 1631-2.   Charlestown, settled in 1629, and recognized as a town in 1630, was enlarged as to its boundaries on March 3, 1635–6, so as to include Spot Pond and its outlet as far as tide water.   The area of the pond at the level of the bottom of its outlet is about one hundred fifty-eight acres, and, at a level eight feet higher to which it finally had been raised early in the eighteenth century, is about three hundred two acres.   In any event, it has always been a great pond within the meaning of the Colony ordinance.   There were meadows about the pond which were of considerable value to the early settlers.   A dam was built at the outlet of Spot Pond and its waters were utilized about 1642 for purposes of power.   Charlestown engaged in litigation from time to time in an endeavor to protect its meadows from overflow due to raising by the mill owners of the level of water in the pond, but was defeated.   Apparently

the rights of the owners of the mill to the maintenance of
the dam and to flowage thus was established as superior to
riparian proprietors on the pond.  Without reviewing this
litigation or other history of the pond, it is plain that the
ruling of the commissioners was right as matter of law to
the effect that the pond in 1725 was the property of the
Province.

No transfer of the title to the pond is shown.  The estab-
lishment of the boundaries of the town so as to include the
area of the pond did not vest in the town any title to it unless
there was an express grant.  Acts of the General Court
fixing boundaries of towns were intended to establish limits
of jurisdiction and were not grants of title.  Mere assertion
by the town of some sort of title was not enough to clothe
it with proprietary rights.  *Lynn* v. *Nahant*, 113 Mass. 433.
*West Roxbury* v. *Stoddard*, 7 Allen, 158.  *Litchfield* v. *Scituate*,
136 Mass. 39.

The nature of the title of the Colony, Province and Com-
monwealth to the great ponds is too well settled to require
restatement.  See *Attorney General* v. *Herrick*, 190 Mass.
307, where many cases are reviewed.  *Sprague* v. *Minon*,
202 Mass. 467.

The petitioner was incorporated as a town in 1725, being
set off from Charlestown.  The act for dividing Charlestown
and erecting the new town of Stoneham, after describing
the boundaries of the latter in broad terms, contained these
words:  " And that the Bounds and Limits of the said Town
of Stoneham be according to the agreement made in Novem-
ber One Thousand Seven Hundred & Twenty-five, by and
between the Committee or Agents for & in behalf of the said
Town of Charlestown, and the petitioners of the Northerly
part thereof; wherein it was Consented and agreed that the
five Ranges or Remaining part of the said first Division do
remain to the Town of Charlestown agreeable to a former
Grant of the Town made in the year 1657/8 And that the
Inhabitants of the northerly half of Charlestown should
have and enjoy that Tract of Land lying in the Bounds
abovesaid Commonly called and known by the name of
Gould's Farm now under Lease to Messrs. Thomas and

Daniel Gould, containing One Hundred and Ten Acres or thereabouts, also one half of all the Town's meadow (and upland) lying on Spot Pond both for Quantity and Quality containing Seventy Nine Acres (by Capt. Burnaps platt) as an Estate in Fee, with an equal share in Spot Pond, the said Land or the value thereof to be Improved for the settling and maintaining an Orthodox Minister to dispense the Word & Ordinances among them."

The act followed in its main features the terms of the agreement therein referred to, made between committees representing the old and the new townships. The proceedings of its committee were confirmed at a town meeting of Charlestown. The commissioners have found that in making and confirming this agreement " Charlestown believed that she owned in fee the land within her borders and that she owned Spot Pond, and that she then believed that she was granting to Stoneham one half undivided interest in the meadows, and one half share in Spot Pond." Mere belief of ownership of title is not the foundation of a right even in those early days respecting an object such as a great pond.

As already pointed out, there is no warrant for a ruling or finding that Charlestown had any title to Spot Pond in 1725. She therefore had nothing in that respect to grant to Stoneham.

The act of the General Court erecting the new town cannot rightly be construed as a grant of the pond to the new town. Its words are not words of grant. In form it is different from the grants of the two great ponds (Wiswell's pond in Newton and Humphrey's pond in Lynnfield) which have come to knowledge through reported cases. *Attorney General* v. *Ellis,* 198 Mass. 91. *Lynnfield* v. *Peabody,* 219 Mass. 322. It is a general principle that " a grant from the sovereign power is to be construed strictly against the grantee. Nothing will be included in the grant except what is granted expressly or by clear implication." *Attorney General* v. *Jamaica Pond Aqueduct Corp.* 133 Mass. 361, 365, 366. The act of 1725 was at most recognition of the agreement between the two committees. It was not a confirmation of the validity of the assertion of ownership by Charlestown. No

one would contend that it ought to be construed as a grant to the town of Charlestown of any part of the pond not theretofore owned by it. No more can it be interpreted as a grant from the Province of a half of the pond to the new town, title to the other half being retained by the Province.

The act of 1725 is not either in form or substance a validation of the illegal attempt by Charlestown to grant a property right in the pond which she did not own. The words of the statute are not words of confirmation. No title is recognized and none is ratified. The case in this particular is distinguishable from *Commonwealth* v. *Pejepscut Proprietors*, 10 Mass. 155, *Attorney General* v. *Boston Wharf Co.* 12 Gray, 553, and like cases where the unequivocal terms of the statutes under review were confirmatory.

Some facts in the report afford ground for the belief that meadow lands, under the waters of the pond when raised to their full height, were exposed and valuable for purposes of husbandry in seasons of low water. If this be so, the words of the agreement and the Province statute have scope for a lawful arrangement as to the use of meadows sometime submerged as well as the meadow and upland around the pond.

The reasoning and the decision in *Lynnfield* v. *Peabody*, 219 Mass. 322, 333, 335, make it plain that even if there had been a grant of one half of the pond to the petitioner in 1725, it would not have given the "lawful power to impair the riparian rights of those who owned or afterwards should own the land upon the stream which formed the outlet" of the pond. The petitioner would not "own the water as a marketable commodity" and would not have "the right to sell the water for that purpose." It "could not have used the pond as a source of supply for its waterworks." The same point was decided in substance and effect in *Proprietors of Mills on Monatiquot River* v. *Commonwealth*, 164 Mass. 227. That case arose from a different angle, but it there was held that even the Commonwealth, as a private owner and not as sovereign, could not divert the waters of a great pond nor obstruct or diminish their ordinary flow through its natural outlet to the impairment of the rights of lower riparian proprietors. Without resting the decision upon

that ground, it is apparent that the petitioner was not granted and did not acquire any rights in Spot Pond in 1725.

Whatever has happened since 1725 tends rather to support this conclusion than to indicate that any proprietary ownership in the waters of the pond is vested in the petitioner.

There is no mention of the rights of the petitioner in St. 1843, c. 76, incorporating the Spot Pond Aqueduct Company. The words of §§ 3 and 9 enabling the aqueduct company to " purchase Spot Pond " have ample scope without implying a title in the petitioner.

The Spot Pond Water Company was incorporated by St. 1867, c. 208, for the purpose of furnishing a water supply from Spot Pond to the towns of Melrose, Malden and Medford.   The words of § 13, to the effect that nothing therein contained " shall be so construed to prevent or interfere with the right of the town of Stoneham to take water from said Spot Pond for the use of the inhabitants of said town," fall far short of being a grant to the petitioner.   That section may have been inserted as a precaution against possible preëxisting rights or in recognition of the natural equity not reaching to a legal right of the inhabitants of a town to a water supply from a great pond within its borders. It is quite different from the explicit provisions to be found, for example, in St. 1895, c. 488, § 22.   See, for statutory language more or less analogous, St. 1794, c. 55; St. 1872, c. 177, § 4; St. 1895, c. 303, § 2, c. 451, § 15; St. 1902, c. 122, § 13.   Whatever may have been the purpose of that section, it confers upon the petitioner no rights and is not a legislative declaration of an existing right.

The act of a janitor of a school house of the petitioner in taking water by pipe from the pond for a time for the use of a school affords the petitioner no title to the waters of the pond.

It becomes unnecessary to consider the effect of the lease of Spot Pond to the petitioner by the Commonwealth through its commissioners of inland fisheries for the purpose of cultivating useful fishes, the conveyances by the petitioner of lands bounding on the pond, and other facts indicating a want of title in the petitioners.

It follows that the petitioner did not on January 1, 1898, have the right to take water from Spot Pond for the use of its inhabitants.

The order accepting the determination of the commissioners that the petitioner suffered no damage by reason of the taking of Spot Pond by the Commonwealth is affirmed. That will be the equivalent of a final judgment and end the proceeding. No costs are allowed. *Alger* v. *Boston,* 168 Mass. 516.

*So ordered.*