## Seylar *versus* Carson *et al.*

69  81
164  132

1. Seylar's property was bought at sheriff's sale by Carson. Seylar alleging that Carson had bought it for him under an agreement, brought ejectment. Carson might give in evidence the record of proceedings by him against Seylar, under the Landlord and Tenant Act by which Seylar was dispossessed as Carson's tenant holding over; the evidence tending to disprove the allegation of fraud in Carson, in the purchases.

2. In the proceeding, Seylar made oath that he held by "virtue of a title acquired since the commencement of the alleged lease," &c. The proceedings were evidence as showing his allegation of a title, inconsistent with that under which he claimed in the ejectment.

3. The court, in answer to plaintiff's point, charged that if Carson, by fraudulently representing at the sheriff's sale that he was buying for Seylar, obtained the property at an underprice, the sale was void, but that there should have been payment or an offer to pay by Seylar before bringing suit. *Held*, that the qualification was error: if there was fraud, a tender was not necessary.

4. If the sheriff's sale was absolutely void, it was incapable of being confirmed by any acts or declarations of Seylar, and no title could pass to Carson without a contract on a new consideration, executed so as to take it out of the Statute of Frauds.

5. If the sale was only relatively void, it could be ratified without a new contract and consideration.

6. That is *absolutely* void, which the law or the nature of things forbids to be enforced at all.

7. That is *relatively* void, which is a wrong to individuals, and the law refuses to enforce against *them*.

8. The acceptance of a lease of the premises by Seylar from Carson, was evidence for the jury of his ratification of the sheriff's sale.

9. Brown *v.* Dysinger, 1 Rawle 408; Pearsoll *v.* Chapin, 8 Wright 9, commented on.

May 9th 1871. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Franklin county*: No. 79, to May Term 1871.

This was an action of ejectment, brought August 15th 1867, by Samuel M. Seylar against George W. Smith, F. W. McNaughton and James O. Carson, for a tract of eight acres of land, with its improvements, known as the "Gap Foundry." Carson having died, his death was suggested on the record November 3d 1870, and James W. Carson and others, his executors, substituted. The property was originally owned by the plaintiff; it was sold on the 16th of January 1863 by the sheriff on a judgment against him, and the sheriff's deed to James O. Carson and F. W. McNaughton acknowledged January 28th 1863. The consideration was $2540. The plaintiff alleged that the property had been bought at the sheriff's sale by Carson for him.

On the trial, before Rowe, J., on the 3d of November 1870, G. W. Wolfe testified for the plaintiff that shortly before the sheriff's sale Carson, Addison Imbrie and witness agreed to buy the pro-

19 P. F. Smith—6

[Seylar *v.* Carson.]

perty for Seylar, who was then absent from home under circumstances which precluded his return. On the day of the sale Imbrie, having come part of the way towards the place of sale, returned home; Carson told witness that. Imbrie had gone home and he must buy the property for himself, that he did not want a partner. "I asked him whether he intended it for Seylar? he said 'yes.' I ran the property up to a certain sum; Carson put on another bid. I said 'are you buying for Seylar?' he said he was; I then stopped bidding; it was then knocked down to Carson. I would have bid more had it not have been for Carson's statement to me. I wanted the property for Seylar. * * * It was agreed between us three, as I have stated, no price was agreed upon. * * * Carson told me the day of the sale that he did not want me as a partner, and I took it, that rescinded the agreement."

A number of other witnesses testified that Carson had said that he bought the property for Seylar; they testified also that it was of considerably greater value than the sum he paid for it.

The plaintiff further gave evidence that one McDonough and Robert Seylar rented the property from Carson in March 1863 for one year. In January 1864 the plaintiff came home and bought Robert's interest in the lease, and he and McDonough carried it on together till the lease expired. Smith, one of the defendants, bought the property from Carson in 1866, and went into possession in the spring of 1867. In January 1867 plaintiff notified Smith that he had a bargain with Carson for the property and he was going to keep it. The plaintiff, who was examined as a witness, on examination said, "I was to pay so much a year; no sum was fixed; I was not to let the $2500 increase."

The plaintiff gave in evidence a note from plaintiff to Carson, dated May 7th 1866, at three months, for $75, on which was endorsed, "August 20, '66, $44. August 20, '66, $20. As purchase-money for year ending April 1, 1866, $300. J. O. Carson." He also gave evidence that in March 1867, he tendered to Carson $2500 for the property, and that Carson said he could not receive it.

The plaintiff rested.

The defendants gave evidence by Mr. McNaughton, that he was a partner with Carson in the purchase of the property, and that he paid $1322.16, his half of the purchase-money, on the evening after the sale.

Carson, by deposition, filed February 17th 1870, testified that he and McNaughton purchased the property at sheriff's sale together. It was knocked down at Carson's bid and he gave to the sheriff his own and McNaughton's name as purchasers.

The plaintiff had no interest in the purchase; witness never stated to any one at, or before the sale, that he was buying for Seylar's benefit; Seylar never claimed to have an interest in the

[Seylar v. Carson.]

property except under the lease until the lease expired, and proceedings were instituted to oust him. Witness did not represent to Wolfe that he was going to buy the property for Seylar. There was no agreement with Seylar that what he paid above the rent should be credited on the purchase-money.

J. Ritchey testified that Wolfe told him immediately after the sheriff's sale, that just before the sale Carson had said he could not go into any arrangement with him and Imbrie for the purchase of the property; that if he, Carson, should bid, he would bid for himself; and if Wolfe wanted he must bid for himself.

The defendant offered in evidence the record of a proceeding under the Landlord and Tenant Acts by Carson and McNaughton against Seylar to recover possession of the premises.

The offer was objected to by the plaintiff, admitted by the court and a bill of exceptions sealed.

The record showed that proceedings had been commenced before the justice, April 6th 1867, on the complaint of Carson. The complaint alleged the possession of the premises, lease, the expiration of the term and three months' notice to Seylar to quit. On the appearance of Seylar, April 13th, he pleaded that the title to the land came in question, and made and filed the following affidavit : —

"That he verily believes that he is entitled to the premises in dispute, in the above proceeding, by virtue of a title acquired by deponent since the commencement of the alleged lease, made by the said plaintiffs to the said defendant. That defendant is informed, and verily believes, that the title of the said plaintiffs determined, and was at an end before the first day of April, A. D. 1867, the termination of the said pretended lease : and at that time the said plaintiffs were not, nor are they at this time, the landlords of deponent, nor does deponent hold under them, nor by virtue of the aforesaid pretended lease, but in his own right; and deponent further saith, that the title to said real estate legally and properly comes into question in these proceedings."

On the 20th of April 1867, "after hearing the parties, their proofs and allegations," the justice entered judgment, "that the defendant forthwith give up possession of the said premises to the lessors," and also gave judgment against Seylar as tenant for $300 damages, &c. On the 26th of April possession was delivered to the plaintiff under a writ of possession : on the 27th, Seylar appealed to the Court of Common Pleas. On the trial of the appeal a verdict was found for the landlord, August 15th 1867, for $200, and on the 17th judgment was entered on the verdict.

The defendant offered in evidence, also, an agreement of counsel filed on the trial of the foregoing appeal. The offer was objected to by the plaintiff, admitted, and a bill of exceptions sealed.

[Seylar *v.* Carson.]

The following is the agreement :—

" It is agreed that in this case, the jury may find for the plaintiffs all rent due up to the 28th April 1867, and no other claim shall be set up for rent by plaintiffs hereafter."

The following are points of the plaintiff :—

1. If the jury believe from the evidence, that prior to the sheriff's sale there was an agreement between James O. Carson, Addison Imbrie and George W. Wolfe that they would attend the sheriff's sale and buy in the property for Samuel M. Seylar, and reconvey it to him when he would reimburse them for the purchase-money ; and in pursuance of that arrangement, the said parties attended the sheriff's sale, for the purpose aforesaid, and James O. Carson, acting pursuant to the arrangement and for the other parties, Wolfe and Imbrie, as well as for himself, bought the property for the said Seylar ; and afterwards, in violation of the agreement and without the knowledge of Wolfe and Imbrie, procured the sheriff's deed to be made to Mr. McNaughton and himself, such a trust was created as can be enforced notwithstanding the agreement was not in writing. And if the jury further believe that Samuel M. Seylar afterwards, and before the commencement of this action, tendered the said Carson $2500 and that sum, together with previous sums received by him, was a full reimbursement of all his outlay and expense about the property, the verdict must be for the plaintiff.

3. If the jury should come to the conclusion that there was in fact no such agreement as is supposed in the first point, and that whilst the bidding for the property was going on at the sheriff's sale, James O. Carson falsely and fraudulently represented to George W. Wolfe that he was buying the property for Samuel Seylar, and by such false representation prevented further bidding and became the purchaser at an under price, the sale was void ; and, in this aspect of the case, it was not necessary for Seylar to tender or pay the purchase-money paid by Judge Carson for the property before bringing his suit.

4. If the jury believe that James O. Carson falsely and fraudulently represented at the sheriff's sale, to the bidders, that he was buying the property for Seylar, and by this contrivance procured the property below its value, the sale was void for actual fraud ; and no subsequent leasing of the property by Seylar from Carson, or other acts or declarations of Seylar proved in the case, would avail to validate and confirm the sale.

The answers of the court were :—

1. " This is not affirmed. We know of no evidence in the case to show that James O. Carson bought the premises in dispute at sheriff's sale, pursuant to the arrangement between Imbrie, Wolfe and himself, and for the other parties, Wolfe and Imbrie, as well as himself. Because both Wolfe and Imbrie say on the stand that

[Seylar *v.* Carson.]

Mr. Carson revoked this understanding before the sale, and notified them he was going to buy for himself and not for them."

3. " This point is affirmed, except that there must have been payment, or an offer to repay."

4. " If there was actual fraud in the sale, which rendered Mr. Carson a trustee *ex maleficio* for Seylar, Seylar might still by his subsequent acts and declarations confirm the sale—this is barring an equity in consequence of the fraud—he might abandon it by acquiescence or laches. And this is the view in which the leases and the evidence of tenancy by Seylar become important, as showing an abandonment by Seylar of his equity. If he found he could not pay Carson (for he could only have the land from Carson upon reimbursing him), and acquiesced in Carson's title and took a lease under him, he is barred, but if it was as he says, that he went in under Carson on the agreement that the rent was to be applied to the interest of the $2540, and the excess over the interest to the reduction of the principal, then his tenancy was not inconsistent with his claim, and does not prove any abandonment of it."

The court further charged : * * *

" If you find there was the fraud in the sale as alleged, and that the property was bought under its value, and that Seylar has not abandoned his claim by his acceptance of leases and his other conduct, but has always insisted on his equity to have the land on repayment of the purchase-money ; and that he offered to repay the purchase-money and its interest, deducting receipts, that is offered a sum sufficient to make the defendant Carson whole, or offered generally to reimburse him, and we think the evidence of offer to reimburse is sufficient if believed, as no objection was made to the sum ; then you may find for the plaintiff, the land in dispute, judgment to be entered on the verdict only on the payment into this court of the sum of money you shall find to be due Judge Carson at this time." * * * * * *

The verdict was for the defendants.

The plaintiff took out a writ of error and assigned for error,

1 and 2. Admission of the defendants' offers of evidence.

3 and 4. The answers to the third and fourth points.

5. The portion of the charge given above.

*J. McD. Sharpe*, with whom was *F. M. Kimmell*, for plaintiff in error.—As to the 3d assignment. No title passed to Carson by sheriff's sale, by reason of his fraud there, and Seylar could recover without offering to reimburse him : Hogg *v.* Wilkins, 1 Grant 68 ; Sharp *v.* Long, 4 Casey 434 ; Jackson *v.* Summerville, 1 Harris 370 ; Gilbert *v.* Hoffman, 2 Watts 66 ; McClurg *v.* Lecky, 3 Penna. R. 94 ; Riddle v. Murphy, 7 S. & R. 236 ; Sands *v.* Codwise, 4 Johns. R. 536 ; Smull *v.* Jones, 1 W. & S.

[Seylar *v.* Carson.]

128. As to the 4th assignment: the sale being void it could not be confirmed: Duncan *v.* McCullough, 4 S. & R. 482; Chamberlain *v.* McClurg, 8 W. & S. 31; Goepp's Appeal, 3 Harris 421; Miller's Appeal, 6 Casey, 478; Butler v. Haskell, 4 Dessaussure's R. 707; Fillman *v.* Divirs, 7 Casey 429; Bennett *v.* Fulmer, 13 Wright 156.

*Stewart & Kennedy* and *J. Cessna,* for defendants in error.— The fraud which will make a purchaser at sheriff's sale a trustee *ex maleficio* of the debtor, must be a fraud committed at the time of the sale; Pearsoll *v.* Chapin, 8 Wright 11; Kellum *v.* Smith, 9 Casey 164; Maul *v.* Rider, 1 P. F. Smith 385; Beegle *v.* Wentz, 5 Id. 374; Load v. Green, 15 M. & W. 216; Clark *v.* Dickson, 1 E., B. & E. 148; Garland *v.* Spencer, 46 Maine 528; Babcock *v.* Case, 11 P. F. Smith 427; Smith's Leading Cases 334; Adler *v.* Fenton, 24 Howard 407; Stevens *v.* Hyde, 32 Barbour 171.

The opinion of the court was delivered, May 13th 1872, by

WILLIAMS, J.—The evidence set out in the bills of exception, constituting the first two specifications of error, was properly received. If it was not admissible for the purpose of showing the plaintiff's confirmation of the sale to Carson—a point presently to be considered—it was competent as tending to rebut the evidence given by the plaintiff to establish the fraud with which Carson was charged, and to corroborate and strengthen the defendant's evidence in disproof of the charge. The plaintiff's acceptance of the lease was an implied admission that the land belonged to Carson and McNaughton, and that he had no title to it as owner; and the defence of a subsequently acquired title, which he set up under oath to defeat these proceedings against him under the Landlord and Tenant Act, was inconsistent with the title under which he claimed to recover the property in this action. The evidence, therefore, had a direct bearing on the question at issue, and was properly allowed to go to the jury.

But the court should have affirmed the plaintiff's third point without qualification. If Carson was guilty of the alleged fraud in the purchase of the property, then, whether the sale was absolutely or relatively void, it was not necessary for the plaintiff, as the authorities show, to pay or tender him the purchase-money which he paid for the property before bringing suit for its recovery: Gilbert *v.* Hoffman, 2 Watts 66; Smull *v.* Jones, 1 W. & S. 128; Jackson *v.* Summerville, 1 Harris 359; McCaskey *v.* Graff, 11 Id. 321; Hogg *v.* Wilkins, 1 Grant 67; Sharp *v.* Long & Brady, 4 Casey 433. It was therefore error to instruct the jury that "there must have been payment or an offer to pay" in order to enable the plaintiff to maintain the action; and the error is

[Seylar v. Carson.]

repeated in the general charge, and pervades the answer to the plaintiff's fourth point. But the answer to this point is complained of on another ground, which it is proper that we should consider, as the cause goes back for a new trial. The point, in the form it was put, is objectionable and the court was not bound to answer it specifically. It asked the court in effect to determine both the facts and the law of the case, and could not have been affirmed without a binding direction to the jury. It was their province to determine what acts or declarations of the plaintiff were proved in the case, and if specific instructions were desired upon the facts which the evidence tended to establish, they should have been hypothetically stated, and the court asked to declare the law arising upon them if found by the jury to be true. If, then, the plaintiff was not entitled to a specific affirmance of the point as presented, was there any error; other than that already suggested, in the general answer that was given to it? The court instructed the jury in substance that if there was actual fraud in the sale which rendered Carson a trustee ex maleficio for the plaintiff, the latter might still, by his subsequent acts and declarations, confirm the sale; and if he acquiesced in Carson's title and took a lease from him, he is barred; but if he went in under Carson on the agreement that the rent was to be applied to the interest of the purchase-money paid by Carson, and the excess over the interest to the reduction of the principal, then his tenancy was not inconsistent with his claim, and does not prove any abandonment of it. Whether this instruction is to be regarded as erroneous or not, depends on the view to be taken of the sale, if Carson was guilty of the alleged fraud. If the sale was absolutely void to all intents and purposes, if no title whatever passed by the sheriff's deed, if it remained in the plaintiff after the sale as before, and the same as if no deed had been executed, as declared in Sands v. Codwise, 4 Johns. 536, and in Gilbert v. Hoffman, 2 Watts 66, and kindred cases, then it follows that the sale was incapable of being confirmed by any acts or declarations of the plaintiff, and that no title could pass to the sheriff's vendees without a contract founded on a new and sufficient consideration and so far executed as to take it out of the statute of frauds: Jackson v. Summerville, 1 Harris 359.

But if the sale was not absolutely, but only relatively void, then, as ruled in Piersoll v. Chapin, 8 Wright 9, it was capable of being ratified and confirmed without a new contract founded on a new consideration. And it seems to us that this is the more reasonable and better opinion, and that the true distinction is there taken between contracts absolutely void and those which are relatively void or voidable. The principle on which the distinction rests, seems to be this: that is absolutely void which the law or the nature of things forbid to be enforced at all: as contracts to

[Seylar *v.* Carson.]

do an illegal act, or omit a legal public duty ; contracts in a form
forbidden by law, or made by persons having no legal power or
capacity to contract : as bonds of married women.. That is rela-
tively void or voidable which the law condemns as a wrong to in-
dividuals and refuses to enforce against them : as contracts
tainted with fraud or any other kind of wrong against persons.
A contract that is absolutely void, cannot be ratified or confirmed,
for that would be giving sanction and validity to an agreement
which the law declares illegal and refuses to enforce. But a con-
tract relatively void, though it cannot be enforced against the de-
frauded party, is not so void " as to vitiate a title under it, as
against a bonâ fide purchaser for value and without notice; or to
prevent the party intended to be injured by it from renouncing
the privilege which the law allows him of rejecting it altogether,
or from ratifying it and thus making it his own; * * * or so as
to need any other or further consideration than that which he is
to receive or may retain under the contract by adopting it."

The doctrine of this case has been recognised and followed in
subsequent cases; Negley *v.* Lindsay, 17 P. F. Smith 217 ; and
we see no reason for departing from it. There was no error in
instructing the jury that if there was actual fraud in the sale, the
plaintiff might still, by his subsequent acts and declarations, con-
firm it. The only remaining question to be considered is, whether
the acceptance of the lease, under the circumstances, was sufficient
evidence of the plaintiff's confirmation of the sale to go to the
jury ? The case of Brown *v.* Dysinger, 1 Rawle 408, in effect
decides the question. There a purchaser at sheriff's sale openly
declared that he was bidding the property for the plaintiff's
ancestor, who subsequently took from him a lease of the premises,
and it was held that whether his acceptance of the lease amounted
to a waiver and abandonment of his claim, was properly left to
the decision of the jury. Though this case has been greatly
criticised on other grounds, and the dissenting opinion of Tod, J.,
is now regarded as a sounder exposition of the law arising on the
facts of the case than the opinion of the majority, yet its ruling
in this respect has never been doubted or questioned. But it is
said that it was a case of legal and not of actual fraud. If
this were so, the opinion suggests no such distinction in sup-
port of the ruling, and it is not easy to see why it is not just
as applicable to a case of. actual as of legal fraud. Besides,
a careful examination of the case will show that in one of its
aspects it was regarded as a case of actual fraud. " A majority
of the court," said Mr. Justice Smith, " are of the opinion that
the parol evidence was properly received, and that there was
proved, not only a fraud in David Walker, but a trust which,
though not declared in writing, was valid notwithstanding the act
of frauds and perjuries." And Gibson, C. J., before whom the

[Seylar v. Carson.]

case was tried in the Circuit Court, in delivering the opinion in Kisler v. Kisler, 2 Watts 325, said: "Such a trust," referring to a trust *ex maleficio*, "seems to be recognised in Lloyd v. Spillet, 2 Atk. 148 ; Peebles v. Reading, 8 S. & R. 492 ; and was actually enforced in Brown v. Dysinger, 1 Rawle 408. It arises from the *artifice* of the party to be affected in procuring the title, and not, as Mr. Justice Tod supposed in the last-mentioned case, from the contract;" and so in Morey v. Herrick, 6 Harris 123, it was said the principle on which Brown v. Dysinger was decided is, that the defendant was guilty of such fraud as operated to convert him into a trustee *ex maleficio* for him who had been deceived. It is then a case directly in point, and shows that the question whether the acceptance of the lease under the circumstances amounted to an affirmance of the sale, was properly left to the jury. And *it* seems to us that on principle the submission was clearly correct. If the plaintiff, as we have seen, might elect to affirm or disaffirm the sale, why should not his acceptance of the lease, if not otherwise explained, be regarded as a recognition of the purchaser's title and an affirmance of its validity under the sale ? Why accept the lease if he did not intend to recognise their title ? And if he did, why should he not be bound by his election after so long acquiescence ?

It follows that there was no substantial error, apart from that already noticed, in the answer to the plaintiff's third point. But for the error in instructing the jury that the plaintiff was bound to pay or offer to pay the purchase-money paid by Carson before bringing suit, the judgment must be reversed. We regret this the more as the verdict is entirely satisfactory, and the error probably did the plaintiff no harm.

Judgment reversed, and a *venire facias de novo* awarded.