KELLY-BUCKLEY COMPANY *vs.* MORRIS COHEN & others.

Suffolk. December 6, 1906. — May 17, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Sales of Merchandise in Bulk. Equity Jurisdiction,* To set aside sale in violation of St. 1903, c. 415, *Bona fide* purchaser for value. *Statute,* Construction. *Mortgage. Words,* "Void."

By the enactment of St. 1903, c. 415, which provides that certain sales of merchandise in bulk, where notices, prescribed by that statute, were not given by the vendee to the creditors of the vendor, shall be "void," it was not the intention of the Legislature that such sales should stand upon any different footing from the general class of fraudulent sales theretofore existing, but to add them to that class as fraudulent and therefore voidable by creditors, and, such sales not being absolutely void, creditors seeking to have them declared so must proceed with reasonable despatch and before the rights of intervening parties acting in good faith have become fixed.

The owner of certain merchandise sold it in bulk in fraud of his creditors and in violation of St. 1903, c. 415, which provides that certain sales of merchandise in bulk, where notices, prescribed by that statute, were not given by the vendee to the creditors of the vendor, shall be "void," and the vendee mortgaged it to the vendor to secure a portion of the purchase price. A creditor, who was not notified of the sale by the vendee in accordance with the requirements of the statute but was notified verbally by the vendor and assured by him that the requirements of the statute had been complied with, and who believed that the statute had been complied with and had no reason to believe and did not believe that the sale was fraudulent, in consideration of a loan to the vendor received from him an assignment of the mortgage. Upon the vendor's being adjudicated a bankrupt his trustee in bankruptcy sought by a bill in equity against the assignee of the mortgage to have the title to the merchandise declared to be in the trustee by reason of the statute. *Held,* that the title of the defendant was that of a purchaser of the merchandise for value without notice, actual or constructive, of the fraud of the vendor, and as to him the sale should not be declared void; that therefore the bill must be dismissed.

The owner of merchandise sold it in bulk in fraud of his creditors to one who gave back to the vendor a mortgage to secure a part of the purchase price. The requirements of St. 1903, c. 415, providing that a sale of merchandise in bulk not in the ordinary course of business shall be "void" unless, among other things, the vendee notifies the creditors of the vendor five days before he takes possession, were not complied with. A creditor of the vendor to a small amount, who had received no notice from the vendee but was notified verbally by the vendor and by him assured that all the requirements of the statute had been complied with, and who did not believe and had no reason to believe that the sale was in fraud of the vendor's creditors, relied on the assurance of the vendor and made a loan to him, taking an assignment of the vendee's mortgage. *Held,* that the assignee of the mortgagee was not culpably negligent in relying upon the vendor's assurance that the terms of the statute had been complied

with, and that he was not in the position of the fraudulent vendee, but in that of a *bona fide* purchaser of the merchandise for value, and that his title was unassailable.

BILL IN EQUITY in the Superior Court for the county of Suffolk filed July 8, 1905, and amended and a substituted bill filed January 30, 1906.

The original plaintiffs, who were creditors of one Cohen, sought to have set aside, because fraudulent as to creditors of Cohen and in violation of St. 1903, c. 415, a sale of certain merchandise in bulk by him to one Virovitz, a mortgage of the merchandise by Virovitz back to Cohen, and an assignment of the mortgage by Cohen to one Bloomberg to secure a loan by Bloomberg to Cohen. A receiver of the merchandise was appointed who, in accordance with an order of the Superior Court, sold the merchandise, and retained the proceeds of the sale. Pending further proceedings on the original bill, Cohen was adjudicated a bankrupt and a trustee was appointed, who was the plaintiff in the substituted bill of complaint and sought to have the merchandise conveyed to him for the same reasons as those alleged as the grounds of the original bill of complaint.

After a hearing before *Gaskill,* J., a final decree was entered dismissing the bill as to Bloomberg and directing the receiver to pay over to him the proceeds of the sale of the merchandise. The plaintiff appealed.

Other material facts appear in the opinion.

*L. M. Friedman,* (*P. A. Atherton & E. F. Aldrich* with him,) for the plaintiff.

*A. E. Burr,* (*D. Stoneman* with him,) for the defendant Bloomberg.

HAMMOND, J. The only question argued before us is whether Bloomberg's claim shall stand as against the trustee in bankruptcy of Cohen.

Upon this matter the trial judge found the facts to be as follows: " Morris Cohen was the owner of the stock and fixtures of a retail shoe store on Washington Street. He was in embarrassed circumstances, and fraudulently, with intent to defeat, delay and hinder his creditors, sold his stock and fixtures to his brother in law Virovitz, another defendant, for the sum of $2,500, $500 to be paid in cash and a mortgage for $2,000 given

as the balance of the purchase money. Cohen and Virovitz caused an inventory to be made of the stock to be sold with cost price, but none of the fixtures; and Virovitz received a list of creditors from Cohen and sent registered letters, and Cohen notified personally other creditors, making in all about one-half of all Cohen's creditors, being all the creditors that Cohen had notified his counsel that he had, and all upon the list furnished. The largest creditor however was intentionally omitted by Cohen, as were many smaller ones. The Fitzpatrick Shoe Company, named as one plaintiff in the original bill, received no notice. The Kelly-Buckley Company, the other plaintiff named in the original bill, received notice by registered mail, but subsequently was notified fraudulently by Virovitz and Cohen that the trade was off. Bloomberg had a claim of $25.80 against Cohen and was notified personally by Cohen but not by Virovitz." The judge also found "that the provisions of the 'bulk law,' so called, had not been complied with; that Hyman Bloomberg in good faith, and without knowledge that the 'bulk law' had not been complied with except as might be implied from the fact that he knew he had received notice from Cohen but not from Virovitz, but, upon inquiry from Cohen, being told by him that the 'bulk law,' so called, had been complied with, believed that it had been, and loaned to Cohen $1,000, taking the mortgage of Virovitz to Cohen for $2,000 as collateral security for said loan." The judge further found that "Bloomberg had no reason to believe and did not believe that the sale from Cohen to Virovitz was in fraud of Cohen's creditors"; and "that Bloomberg has a valid claim under said mortgage for the amount thus advanced by him, less $75 paid him, with interest from the date of payment, July 31, 1905."

By the term "bulk law" the judge meant St. 1903, c. 415, the first section of which reads as follows: "The sale in bulk of any part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, shall be fraudulent and void as against the creditors of the seller, unless the seller and purchaser, at least five days before the sale, make a full, detailed inventory, showing the quantity and, so far as possible with exercise of reasonable diligence, the cost price to the seller

of each article to be included in the sale; and unless the purchaser demands and receives from the seller a written list of names and addresses of creditors of the seller, with the amount of indebtedness due or owing to each and certified by the seller, under oath, to be, to the best of his knowledge and belief, a full, accurate and complete list of his creditors and of his indebtedness; and unless the purchaser shall, at least five days before taking possession of such merchandise, or paying therefor, notify personally, or by registered mail, every creditor whose name and address are stated in said list, of the proposed sale and of the price, terms and conditions thereof."

It is argued by the plaintiff that so far as respects the rights of creditors the word " void " means absolutely void and not merely voidable; and hence that, as against creditors, things stand as though this sale had never taken place, and consequently that, Virovitz never having any title, the mortgage from him under which Bloomberg holds is a nullity. The question whether in a statute the term " void " is used with entire technical accuracy, or only in its less strict meaning as voidable, is frequently one of difficulty. In many statutes the word is used in its strict technical sense, and in many it is used in the sense of voidable. In view of the subject matter of this statute, the condition of the law prior to its passage, the abuse which it aims to correct, and the manifest difficulty of any other view, we are of opinion that the Legislature intended to place the kind of sale named in the statute in the class of sales theretofore existing as fraudulent and for that reason voidable by creditors, unless the conditions therein prescribed were complied with; or in other words it intended to create another instance of a sale which the creditors might avoid as being fraudulent and for that reason against their rights. But it was not the intention of the statute that this kind of sale should stand upon any different footing from that of the general class to which it was added. The sale is voidable like the other kinds of sales which commonly are called void as against creditors; and the right of the creditor as to this sale is similar in its nature to the right of the creditor in such other sales. Such an interpretation of the statute seems to us reasonable, and in accordance with the general principle of law applicable to the subject matter. See in this connection the

language used by Knowlton, C. J., in giving the opinion of the court in *Squire* v. *Tellier*, 185 Mass. 18. Although the formalities prescribed by the statute had not been complied with, yet the sale was not an absolute nullity. A creditor, it is true, can avoid it, but he must proceed with reasonable despatch and before the rights of intervening parties acting in good faith shall have become fixed.

It is found that Bloomberg had no reason to believe and did not believe that the sale from Cohen to Virovitz was in fraud of Cohen's creditors. He believed also that the statute had been complied with, and had no knowledge that it had not been, unless such knowledge is implied from the fact that he knew that he, being a small creditor, had received notice from Cohen but not from Virovitz. Cohen told him that the law had been complied with and he believed it. The statute required that his name and address, with the amount of the indebtedness due him, should be upon the list which Cohen was to make under oath and hand to Virovitz, and that Virovitz, five days before taking possession of the merchandise or paying therefor, should notify him (Bloomberg) personally, or by registered mail, of the sale. Bloomberg knew that he had received no letter from Virovitz, but nevertheless he was told by Cohen that the statute had been complied with; and he may have understood from that either that Cohen in telling him of the sale was acting for Virovitz, or that the registered letter, though sent, had not reached him. Under the circumstances it cannot be said that he knew the conditions of the statute were not complied with. In no way therefore did he have any knowledge of the fraudulent character of the transaction.

It is argued by the plaintiff that even if Bloomberg did not have knowledge of the fraud yet he had constructive notice which should have put him on inquiry, and that that was enough. To this the defendant, relying upon *Carroll* v. *Hayward*, 124 Mass. 120, replies that constructive notice is not enough.

We have not found it necessary to consider whether in this Commonwealth, since the decision in *Carroll* v. *Hayward*, actual notice is required to defeat the title of a *bona fide* purchaser for a valuable consideration from a fraudulent vendee, because

we are of opinion that, even if the doctrine of constructive notice is applicable, the findings of the judge establish Bloomberg's title.

The judge has found that Bloomberg was a *bona fide* purchaser for a valuable consideration; that he had no reason to believe and did not believe that the sale from Cohen to Virovitz was in fraud of Cohen's creditors, and that he acted throughout in good faith. The judge further found that Bloomberg had no knowledge that the law had not been complied with except such knowledge as may be implied from the fact that he knew he had received notice from Cohen and not from Virovitz. While it is true that he had not received notice, yet, as above stated, he believed that one had been sent, because Cohen told him so. His bill was small; he had no suspicion of fraud, and the fact that he had not received notice did not under the circumstances put him on inquiry as to whether all the other creditors of Cohen had been notified. The judge has found that Bloomberg had a valid claim under the mortgage. If the law is as claimed by the plaintiff, then this finding involves the statement that in the matter of notice and inquiry Bloomberg did all that was legally required of him unless as matter of law his knowledge of the fact that he had received no notice was fatal to him. It seems to us under the circumstances that it cannot be said that he was grossly or culpably careless in relying upon Cohen's statement. See for the general doctrine of constructive notice, *English & Scottish Mercantile Investment Co.* v. *Brunton*, [1892] 2 Q. B. 700; *Ware* v. *Egmont*, 4 DeG., M. & G. 460. See also 2 White & Tudor's Lead. Cas. in Eq. (7th ed.) 199–203, and cases there cited.

It is suggested by the plaintiff that even if that be the rule in an actual purchase of the property, still the rule is not applicable to the present case because the title comes under a mortgage and the assignee of the mortgage can stand in no better position than the mortgagee himself. But that position is untenable. If Virovitz had made the mortgage directly to Bloomberg the rule would have been applicable, *Carroll* v. *Hayward*, *ubi supra*, and it can make no difference that Bloomberg obtained it through Cohen. There is no reason why the rule should not apply to a conditional sale by way of mortgage as well as to an absolute

sale. Neither the mortgage nor the assignment is before us, but it is to be assumed from the findings of the trial judge that it was a conditional conveyance of the goods, and that the assignment was in the usual form.

Before any creditor had sought to avoid the sale or' to assert his rights to the property notwithstanding the sale, Bloomberg, acting in good faith, had lent the money to Cohen and received from him the mortgage. The result is that his right to the proceeds of the sale of the goods is paramount to the rights of both the creditors and the trustee.

*Decree affirmed.*