CHARLES L. TILTON & others *vs.* CITY OF HAVERHILL.

Essex.    May 14, 1941. — May 28, 1942.

Present: FIELD, C.J., DONAHUE, LUMMUS, & DOLAN, JJ.

*Tidewaters.   Harbors.   License.   Words, "Void."*

Failure to record, within one year from its date as required by St. 1872, c. 236, § 4, a license, granted in 1881, and the accompanying plan for an extension of a wharf below high water mark rendered the license void and not merely voidable, and successors in title of the licensee were not entitled to recover under St. 1937, c. 405, § 2, for damages to a building on such extension.

PETITION, filed in the Superior Court on March 24, 1938.

The respondent in its answer alleged that the petitioners "are maintaining a public nuisance on the land described in said petition in that they are occupying land beneath the high water mark and land beneath the low water mark of the Merrimack River in Haverhill . . . without being duly licensed therefor."

The case was heard and reported by *Williams,* J.

*S. Parsons,* for the petitioners.

*W. C. McDonald,* City Solicitor, (*W. S. Soroka,* Assistant City Solicitor, with him,) for the respondent.

DOLAN, J.   This is a petition for assessment of damages to the petitioners' premises, caused by the construction of a sea-wall under authorization of St. 1937, c. 405.   The case was heard upon the report of an auditor and other evidence.   The judge found for the respondent, stating that he based his ruling that the petitioners could not recover and his finding for the respondent "entirely on the auditor's report," and reported the case for determination by this court.

The report of the judge sets forth that it presents only the following questions of law: "1. Does the failure of John C. Tilton to record his license within one year preclude the . . . [petitioners] from recovering in this action?

2. Was the correct measure of damages the cost of repairing or replacing the damaged building, or is the diminution in value of the building due to the work the correct measure of damages? 3. Has the auditor failed to apply the true rule of damages in either alternative?" The report further states that "If, as a matter of law, the . . . [petitioners] were not entitled to recover, judgment is to be entered for the . . . [respondent]. If the . . . [petitioners] are entitled to recover as a matter of law, and the cost of repairing or replacing the damaged building is the correct measure of damages, then there is to be judgment for the . . . [petitioners] for . . . $17,693.52 with interest from the date of the writ. If the correct rule of damages is the diminution in value of the building due to the work, then there is to be judgment for the . . . [petitioners] for . . . $6,800 with interest from the date of the writ. If the auditor has not applied the correct rule of damages in either alternative, then the case is to be recommitted to the Superior Court for further hearing on the question of damages." It was agreed by the parties that all the material evidence in the case is contained in the auditor's report.

The material facts found by the auditor follow: In order to prevent the inundation of the downtown area of the respondent city by the flood waters of the Merrimack River, the city was authorized by St. 1937, c. 405, to enter into a flood control project with the United States. This involved the construction of a sea-wall which ran directly behind the petitioners' premises. Because of excavations made and pile driving near the foundation of the petitioners' building in the course of the work, the walls of the building were badly cracked, and the floors were out of level. To restore the building to its previous condition would cost $17,693.52, whereas the diminution in value of the building was $6,800.

Statute 1937, c. 405, § 2, provides, so far as here material, that ". . . any person injured in his property by any act of said city under any provision of this act may recover from said city damages therefor under . . . chapter seventy-nine," and U. S. C. Sup. V, Title 33, § 701c, provides that the responsible local agency must give assurance to

". . . (b) hold and save the United States free from damages due to the construction works."

In 1881 John C. Tilton, a predecessor in title, acting under the provisions of St. 1872, c. 236, applied to the board of harbor commissioners for a license to extend the wharf on the premises in question to a point below high water mark, in accordance with a plan filed by him with the commissioners, from which it appears that the rear line of the proposed extension coincides with the rear line of Sargent and Holden's wharf adjoining. A license to extend the wharf in accordance with the petition and plan was granted on November 10, 1881, and was duly approved by the Governor and Council on November 11, 1881.

In pursuance of the license, the licensee extended his wharf to the line set out in the plan "within the time prescribed by statute." Since the statute did not prescribe the time within which the work should be done, we interpret this to mean that the wharf was extended within the year following the issuance of the license. Later a two-story skating rink, which rested in part upon the wharf, was erected. In 1902 or 1903 the rink burned down. In April, 1903, the present brick building on the premises was erected in accordance with a permit issued by the city authorities.

The licensee, John C. Tilton, did not record the license and plan until January 13, 1883, which was more than a year after the effective date of the license. Statute 1872, c. 236, § 4, however, provided in part that "every license hereafter granted by said board shall be void, unless the same and the accompanying plan are recorded within one year from the date thereof, in the registry of deeds for the county or district within which the work licensed is to be performed." This provision of St. 1872, c. 236, has remained in force in substantially the same language since its enactment. (See G. L. [Ter. Ed.] c. 91, § 18.) The petitioners contend that the word void in the statute should be construed as meaning voidable, that the presence of the building is not a nuisance and that the damage to the building is compensable.

Statute 1866, c. 149, provided for legislative authoriza-

tion to build over tidewaters, and for a board of harbor commissioners who were to approve plans for and supervise the construction of the legislatively authorized structures (§ 4). Section 5 provided that "All erections and works hereafter made without authority from the legislature, or in any manner not sanctioned by the board of harbor commissioners, where their direction is required . . . shall be considered a public nuisance and liable to indictment as such." This statute made no provision for recording the license. (See G. L. [Ter. Ed.] c. 91, § 23, for similar provision as to such erections and works not authorized by the General Court or the department of public works.)

Statute 1869, c. 432, § 1, provided in part that "All authority or license that has been granted during the present session of the legislature, or that may be hereafter granted by the Commonwealth" to build any structure over tidewaters "shall be revocable at any time, at the discretion of the legislature, and shall expire at the end of five years from its date, except where and so far as valuable structures, fillings or inclosures . . . shall have been actually and in good faith built or made under the same." This provision has remained in force since its enactment. (See G. L. [Ter. Ed.] c. 91, § 15, to the same effect.)

The harbor line on the water front of the Merrimack River in the city of Haverhill was established by St. 1883, c. 104, wherein "John C. Tilton's wharf" (the premises here involved) was referred to as one of the bounds. Section 2 of that statute provided in part that nothing in the act should be construed as authorizing the construction or extension of any wharf or as giving or confirming a right to maintain any structure in or over the tidewaters of the river, or as reviving or extending any grant or license theretofore made or given; and that any license theretofore given to build or extend any structure "beyond the harbor line established by this act is hereby revoked."

The adoption of St. 1872, to which we have already referred, was recommended by the harbor commissioners in order to "relieve the legislature of a class of applications involving no questions of principle, and which can all be

brought under the operation of a general law." Sixth
Annual Report of the Board of Harbor Commissioners
(1872), page 72. See also pages 127, 128. While the com-
missioners in recommending the passage of the draft act
which was adopted and enacted by the Legislature described
three main features of the proposed law, one of which was
the provision for recording the license and accompanying
plan, they made no reference in their discussion of the draft
act to the provision contained therein to the effect that the
license shall be void unless it and the accompanying plan
are recorded "within one year from the date thereof."
The board, however, pointed out in its report (page 73)
that the draft act (page 127) which it recommended was
only a utilization of Res. 1859, c. 103, "concerning flats
and shores belonging to the Commonwealth." That resolve
contained a provision for recording all deeds and instru-
ments made by the land agent in the records of the land
office, and that "all title deeds, maps, charts and surveys
relating to the aforesaid property shall be there deposited
and kept." Nothing is said in the resolve about any fail-
ure to record. By St. 1861, c. 85, the "land office, estab-
lished for the management and sale of lands, flats and shores
belonging to the Commonwealth" was abolished. The
report of the board also states that Res. 1859 was not re-
pealed but that after the land office was abolished there
was no board that considered it was authorized to exercise
what had been the powers of the land agent under the
resolve. It thus appears that the provision of St. 1872
relating to the license being void if not recorded as therein
provided had no counterpart in any previous legislation,
that the main object sought by the board as to the subject
matter was to have a place of record for the licenses issued
by it and the accompanying plans. The object of the board
in recommending the provision that failure to record them
within a year should render the license void is not disclosed
in its report. Nor is there anything to disclose the intent
of the Legislature in adopting that particular provision
other than the express terms of the provision itself. It has
not been interpreted heretofore by the court, although it

has remained in force since its adoption. (G. L. [Ter. Ed.] c. 91, § 18.) In the foregoing circumstances the question whether by this provision it is intended that the license shall be void in the strict sense or that it shall be merely voidable in case of failure to record it and the accompanying plan within a year from the issuance of the license is one of some difficulty.

It is recognized that the "question whether in a statute the term 'void' is used with entire technical accuracy, or only in its less strict meaning as voidable, is frequently one of difficulty." *Kelly-Buckley Co.* v. *Cohen,* 195 Mass. 585, 588. We must look to the general rules governing the construction of the words of a statute for guidance. Under these rules "The words of a statute are the main source for the ascertainment of a legislative purpose. They are to be construed according to their natural import in common and approved usage. . . . Statutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times, prior legislation, contemporary customs and conditions and the system of positive law of which they are part, and in the light of the Constitution and of the common law, to the end that they be held to cover the subjects presumably within the vision of the Legislature and, on the one hand, be not unduly constricted so as to exclude matters fairly within their scope, and, on the other hand, be not stretched by enlargement of signification to comprehend matters not within the principle and purview on which they were founded when originally framed and their words chosen. General expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense." *Commonwealth* v. *Welosky,* 276 Mass. 398, 401, 402, and cases cited. *Commissioners of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349, 360. The abuses which the statute aims to correct, *Cuneo* v. *Bornstein,* 269 Mass. 232, 236, and the purpose sought to be accomplished are to be considered, *Nickels* v. *Scholl,* 228 Mass. 205. The intent of the statute is to be

ascertained from all its terms and parts and the subject matter to which it relates, and should be so construed as to make it an effectual piece of legislation in harmony with common sense and sound reason. *Knapp* v. *Amero*, 298 Mass. 517, 522. Considered in the light of these principles we are unable to discover anything to lead us to the conclusion that the word "void" in the governing statute does not mean void, that is, of no force and effect as distinguished from voidable, recognizing that what may appear to be a hardship and inequitable may be considered only where the construction is doubtful, and that the court cannot read into a statute an intent that is not there expressed in plain words or by necessary implication. *Bergeron, petitioner*, 220 Mass. 472, 475. *Eastern Massachusetts Street Railway* v. *Trustees of the Eastern Massachusetts Street Railway*, 254 Mass. 28, 33.

In the present case, as pointed out before, there is nothing in any prior legislation from which to gather an intent that the word "void" in the governing statute was not used in its strict sense. There was no such prior provision of statute. There is nothing in the report of the board that recommended the enactment of the statute to explain why the provision was inserted by the board in the draft act. There is nothing in the progression of that statute through the Legislature [1] that adopted it to indicate that the word "void" was not used in its strict sense.

It is true that in certain cases the word "void" in a statute has been interpreted to mean "voidable," see *Smith* v. *Saxton*, 6 Pick. 483, 486; *Trask* v. *Wheeler*, 7 Allen, 109, 111; *Kelly-Buckley Co.* v. *Cohen*, 195 Mass. 585, 588, and that by recording statutes relative to conveyances of real estate (G. L. [Ter. Ed.] c. 183, § 4), to mortgages of personal property (G. L. [Ter. Ed.] c. 255, § 1), and to conditional sales (G. L. [Ter. Ed.] c. 184, § 13, as now appearing in St. 1937, c. 245, § 1), the failure to record the instruments involved renders them invalid only against those persons who would be most likely to rely upon the recording, and

---

[1] Senate Documents (1872) No. 241. Journal of Senate (1872) 291, 297, 300, 337. Journal of House of Representatives (1872) 399, 405, 410, 433.

that in each instance the respective instrument is still binding between the parties. But in those cases no rights of the Commonwealth as to property held in trust for the people are concerned. And in the instant case we think that the statute under which the license was granted, like statutes relating to grants by the public authority to private individuals, must be strictly construed in favor of the public against the licensee. *Cleaveland* v. *Norton,* 6 Cush. 380. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 492. *Boston* v. *Richardson,* 13 Allen, 146, 156. *Lynnfield* v. *Peabody,* 219 Mass. 322, 330. *Stoneham* v. *Commonwealth,* 249 Mass. 112, 117. 2 Sutherland, Statutory Construction (2d ed.) §§ 548, 558. See *Commissioners of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349. In keeping with this principle it has been held that the word "void" used in a statute is to be construed as meaning of no effect and incapable of confirmation, where, as here, strict construction will confer a benefit upon or secure a right to the public. *Van Shaack* v. *Robbins,* 36 Iowa, 201, 205, and cases cited. *Denny* v. *McCown,* 34 Ore. 47, 51, 52.

Moreover, we are of opinion that it cannot be said rightly that a literal interpretation of the word "void" in the statute involved would defeat its purpose, namely, that the license and accompanying plan must be recorded within one year from the date of the license or else be void. In the case at bar to construe the word "void" as meaning merely "voidable" would be to strip it of its force and in effect to ascribe to it the meaning of revocable, a purposeless construction, since the right of revocation was reserved to the Legislature by St. 1869, c. 432, § 1, incorporated in St. 1872, c. 236, under which the license was issued, and which has since been so preserved. G. L. (Ter. Ed.) c. 91, § 15.

It follows from what has been said that since the license in question and the accompanying plan were not recorded within one year from the effective date of the license, as required by the statute, the license became void in the strict sense and that it must be held that thereafter the structure involved was maintained upon lands in control of the

Commonwealth without legal right and that therefore the petitioners are not entitled to recover. See *Mason* v. *Holt,* 1 Allen, 45; *Joly* v. *Salem,* 276 Mass. 297, 303.

In accordance with the terms of the report, judgment is to be entered for the respondent.

*So ordered.*