## Kadair v. Serack

*Lawrence M. Sebring*, for plaintiff.
*Thompson Bradshaw*, for defendant.

SOHN, J., July 23, 1947.—M. G. Kadair brought an action in assumpsit against Carl H. Serack. Plaintiff, a resident of the City of Pittsburgh, executed and delivered to defendant a bill of sale for the store, fixtures and business at 1435 Beaver Avenue, Pittsburgh, Pa., on July 11, 1946. Defendant, at the same time, delivered to plaintiff his check in the amount of $2,200 in payment of the consideration. On July 13, 1946, the check was presented to the Economy Bank of Ambridge

and payment was refused because defendant had directed the bank to stop payment on the check.

Plaintiff entered suit at the above number and term, and defendant filed an affidavit of defense, admitting the allegations contained in the statement of claim except that the bill of sale was the sole consideration for the check. Defendant also alleges that on July 12, 1946, defendant was advised by counsel that it would be necessary for plaintiff to comply with the Bulk Sales Act of May 23, 1919, P. L. 262, sec. 1, and that he thereupon requested plaintiff to comply with the provisions of this act, and plaintiff refused. Defendant also alleges that plaintiff, as a part of the consideration, agreed to secure a new lease from the landlord to defendant for the premises occupied by the business. The case was tried before a jury, and at the conclusion of defendant's case, we directed the jury to return a verdict in favor of plaintiff. Defendant has filed a motion for judgment n. o. v. and a motion for a new trial. These motions are now before us for consideration.

Defendant's position in this case is based on the contention that defendant had the right to rescind and cancel the agreement when plaintiff failed to comply with the provisions of the Bulk Sales Act. We do not agree with defendant's contention. In 24 Am. Jur. 355, §245, it is said:

"Although there is some authority to the contrary, the fact that a sale has been made in violation of a Bulk Sales Act does not, according to the majority view, affect the validity of the transaction so far as the rights of seller and buyer are concerned. The sale is binding and effectual as to the parties thereto and persons claiming under them; the effect of the statute is merely to make the sale voidable at the instance of creditors, notwithstanding the use of the term 'void.' Except as to the seller's creditors, the title to the property is deemed to have passed to the purchaser and to be vested

in him until it has been divested by proceedings which have been instituted by a creditor.

"Misrepresentation on the part of the seller to the effect that he has no creditors may constitute ground for rescission of the sale.

"Where the purchaser, having been sued by an alleged creditor, has successfully defended the action, he is not entitled to recover of the seller the expenses of the suit."

In 37 C. J. S. 1354, §485, the following appears:

"The bulk sales statutes do not in any way affect the validity and enforceability of the transfer as between the immediate parties thereto. A sale not in compliance with the bulk sales statutes is valid as against all persons other than creditors. Notwithstanding a noncompliance with the statutes, title to goods transferred passes to the transferee as between the parties to the transfer, where it remains until divested by proceedings instituted by a creditor for that purpose. The statutes cannot be invoked to protect a conditional seller as such; and, if a seller has been guilty of fraud to the injury of the buyer, or if there has been an entire failure of the consideration, the seller cannot hide behind the statute and thus avoid liability to the purchaser. On the other hand the purchaser cannot invoke any of the provisions of the statutes to protect or shield him from the performance of his obligations under the sale contract. The statutes do not preclude the seller from recovering the purchase price of a sale made in violation of their terms; but, where a sale is void for noncompliance with the bulk sales statutes, it cannot as between the parties be made to operate to give the vendee a lien for the money he has paid. It is not a ground to rescind an entire contract by which property is exchanged for merchandise, without complying with the statutes, that there is a partial failure of consideration by reason of the fact that creditors assert rights

to a part of the merchandise, but damages to the extent to which the buyer was injured will be awarded."

In 5 A. L. R. 1517, the following appears:

"It seems to be the general rule that the fact that a transfer of property is in fraud of the creditors of the transferrer does not affect the rights of the parties, but merely makes the transfer invalid at the instance of a creditor. See 12 R. C. L., p. 597. It is held in Escalle v. Mark (reported herewith) ante, 1512, that the provision in a Bulk Sales Law that a sale made without complying with its requirements shall be 'void' as to creditors does not put such a sale on a footing different from other fraudulent conveyances. It is accordingly held that the seller may recover the price, though the sale was in violation of the act."

In Rubin v. Goldberg et al., 18 D. & C. 371, it was held:

"Failure of a vendor to furnish his vendee with a statement of the names and addresses of all the former creditors, in accordance with the provisions of the Sales in Bulk Act of May 23, 1919, P. L. 262, does not entitle the vendee to a decree cancelling the transaction, the purpose of the statute being to protect the vendors' creditors, and the sale under such circumstances being not void but only voidable at the election of those creditors." (Syllabus)

At the trial, we directed a verdict for plaintiff on the authority of the opinion by Judge Keller in Gibbon v. Arronson et al., 80 Pa. Superior Ct. 36, in which opinion Judge Keller said (p. 39):

"We are of opinion that the sale is consummated within the meaning of the act when the goods are sold and delivered and paid for and open and notorious visible possession thereof taken by the purchaser; that it has practically the same meaning as 'completion of said purchase' used in the second section; that the sale may be completed or consummated by payment for and delivery of the goods without complying with the pro-

visions of the act for the protection of the vendor's creditors, but in that event, the purchaser runs the risk of the sale being declared fraudulent and void as to such creditors and set aside as to them, and he may be compelled to pay to them (i. e., pay a second time) the fair value of such goods, provided they bring their proceedings to invalidate the sale within ninety days after such sale was completed or consummated as aforesaid.

"This requires the word 'void' in section 3 to be construed as 'voidable', (Seylar v. Carson, 69 Pa. 81, 87; Pearsoll v. Chapin, 44 Pa. 9, 15) but a reading of the entire act permits of no other construction: Dickinson v. Harbison, 78 N. J. L. 97, 72 Atl. 941; Kelly-Buckley Co. v. Cohen, 195 Mass. 585, 81 N. E. 297, 299; Mac-Greenery v. Murphy, 76 N. H. 338, 82 Atl. 720; Tudor v. Tudor, 80 Vt. 220, 67 Atl. 539. The appellees admit that such a sale is not void, in the sense that it is absolutely null and has no validity whatsoever. Whether the requirements of the act have been observed or not, the sale, when completed, is perfectly good as between the vendor and purchaser, and if the former has no creditors, or if they are paid by him out of the proceeds of sale, or otherwise, it is good as to the world. To invalidate the sale the vendor's creditors must act, and the statute provides that they must bring their proceedings within ninety days from the date when the sale was consummated, that is, completed according to common understanding, by payment of the purchase money, delivery of the goods and open and notorious transfer of possession to the purchaser; and if such proceedings are brought the sale is only invalidated to the extent necessary to pay the vendor's creditors existing at the time the sale was made. Subsequent creditors cannot take advantage of the proceeding. The act only has reference to genuine sales in bulk where title is intended to pass and payment is actually made. Fraudulent transfers of property, without consideration, for the purpose of cheating creditors, are not within the

scope of the act and are not affected by the ninety-day limitation."

Counsel for defendant contends that this case is not authority in support of plaintiff's position in the instant case. In Gibbon v. Arronson, the action was instituted by a bill of equity filed after the expiration of the 90-day period provided by the act. The decision, however, is in line with a great number of authorities in many jurisdictions. The overwhelming weight of authority in other jurisdictions are in accord with this decision and the other authorities quoted in this opinion.

Counsel for defendant insists that because of the failure of plaintiff to comply with the provisions of the Bulk Sales Act when requested, defendant thereupon had a right of rescission and cancellation of the contract.

In Bispham's Principles of Equity, p. 49, sec. 31, the following appears:

"Akin to the equitable remedies of specific performance and injunction are those of Re-execution, Reformation, Rescission and Cancellation. All these remedies together embrace, as it were, the complete circle of equitable relief in the case of contracts and duties. Thus, a party may be held to a literal compliance with his contract by a decree for its specific performance; or he may be restrained from a violation of the contract by a writ of injunction; or, finally, if the written paper, which is the evidence of the contract, be lost, a re-execution may be ordered; if the contract has been erroneously expressed, a reformation may be decreed; and if, on the other hand, it has been obtained through fraud, it may be rescinded, and the documentary evidence may be directed to be delivered up and cancelled. Re-execution, reformation, and cancellation are the means whereby the equities of accident, mistake, and fraud are ordinarily worked out. Thus, where instruments are lost through accident,

the equitable remedy which is applied is re-execution; where an instrument has been erroneously framed through mutual mistake, so that it does not express the intention of the parties, and the mistake is clearly proved, the redress which is afforded is reformation; while, where a contract has been entered into in ignorance or mistake, or is tainted with fraud, the relief which a chancellor affords is rescission and cancellation."

To rescind a contract is not merely to terminate it, but to abrogate it from the beginning. A suit to rescind a contract cannot be differentiated from a suit to annul the contract. To rescind is not merely to terminate it and release the parties from further obligations to each other, but to abrogate it from the beginning and restore the parties to the relative positions which they would have occupied had no contract ever been made. Defendant does not allege fraud in the execution of the contract. Without an allegation of fraud and an offer of proof in support thereof, there is nothing in the record upon which defendant could base a right of rescission. There is no allegation in this case that the parties contemplated there should be any right of rescission.

Defendant in this case also contended at the trial that as a part of the consideration plaintiff agreed to furnish a lease for the premises occupied by the business. Defendant testified that plaintiff told him a lease would be forthcoming for the premises several days after the delivery of the bill of sale. On cross-examination, defendant testified that he knew the property was not owned by plaintiff. Defendant said he did not know what terms were to be in the lease, or what period of time would be the term of the new lease, or how much rent. He said he did not ask plaintiff whether he was to secure a lease on similar terms to the lease under which plaintiff occupied the premises. In our opinion this testimony was vague, in-

definite and not explicit enough to justify the conclusion that defendant relied to his disadvantage on any promise relative to a lease made by plaintiff. Plaintiff was not the owner of the premises and defendant knew plaintiff was not the owner.

Defendant's motions for judgment n. o. v. and for a new trial must be denied.

### Order

And now, to wit, July 23, 1947, defendant's motion for judgment n. o. v. is denied.

### Order

And now, to wit, July 23, 1947, defendant's motion for a new trial is denied, and upon payment of the jury fee, the prothonotary is directed to enter judgment on the verdict.