Lewiton, J.
In this action of contract, brought against the Director of the Division of Employment Security, under section 18 of the Employment Security Law (G. L. (Ter. Ed.) c. 151A, inserted by St. 1941, c. 685), the plaintiff seeks to recover certain alleged over-payments made by it 'in the form of employer’s contributions for the last two quarters of 1944, together with interest on the amounts of such over-paymentsi The case was submitted to the trial court upon an “Agreed Statement of Facts” containing all of the material facts bearing upon the issues raised. No other evidence was offered. The court found for the plaintiff for the full amount of over-payments claimed by it, *15 but refused to find that the plaintiff was entitled to interest thereon.
The defendant claiming to be aggrieved by the finding for the plaintiff, and the latter claiming to be aggrieved by the failure to award interest, the court reported both issues to the Appellate Division for determination.
We affirm the action of the trial court.
The following is a summary of the material facts in the case:
On June 30,1944, Holtzer-Cabot Electric Company (hereinafter referred to a.s “Holtzer-Cabot”), a Massachusetts corporation having its principal place of business in Boston, and Micro Switch Corporation (hereinafter referred to as “Micro”), an Illinois corporation, having a usual place of business in Boston, were merged with the plaintiff, a Delaware corporation, which had had no employees in Mass-' achusetts prior to the merger, and consequently had not been subject to the Employment Security Law of this Commonwealth.
During the first six months of 2944, Holtzer-Cabot, which had been assigned an employer’s contribution rate of .5% for that year, had employed approximately 2,000 employees and had paid 1 ‘ taxable wages ’ ’ in Massachusetts amounting to $2,848,284.98, on which it had paid contributions to the Employment Security Division in the amount of $14,241.42. During the same period, Micro had employed two employees in Massachusetts and had paid “taxable wages” of $2,388.00 upon which it paid employer contributions at its assigned rate of 2.7%, in the amount of $64.48.
Following the merger, the plaintiff continued solely and without interruption, and without substantial change in the nature of either business, the employing enterprises of Holtzer-Cabot and Micro. The plaintiff gave due notice of the merger to the predecessor of the defendant Director *16 (hereinafter referred to as the defendant) and took all other action essential to entitle it to succeed, if otherwise qualified therefor, to the merit rating of its predecessor employing units. The defendant thereafter notified the plaintiff that its contribution rate for the period from July 1, 1944 to December 31, 1944, would be 2.7%. During that period, the plaintiff paid “taxable wages” in Massachusetts amounting to $2,461,481.93, of which only $3,451.20 represented wages of the Micro Division and the balance represented wages of the Holtzer-Cabot Division. On these total wages during the second half of 1944, the plaintiff paid employer contributions to the defendant, pursuant to his directions, amounting to $66,462.01, whereas it would have been required to pay only $12,309.41 if it had enjoyed the benefit of the .5% merit rate for that period.
For the year 1945, the defendant assigned to the plaintiff a contribution rate of .5% covering all of its Massachusetts enterprises, including both the Holtzer-Cabot and Micro Divisions.
In 1947, within the time allowed by section 18 of the Employment Security Law, the plaintiff duly filed applications for refunds of the alleged over-payments, which applications were denied by the defendant. Thereafter, pursuant to said section 18, this action was brought to recover the amount of the over-payments, with interest thereon.
The fundamental issue involved in this case is whether the plaintiff, as successor employing unit, was entitled to the benefit of the .5% employer’s contribution rate of its predecessor Holtzer-Cabot, during the second half of 1944.
Section 14 of the Employment Security Law provides that thé determination of the rate of contribution to be made by an employer shall be based upon experience or merit ratings. Prior to 1943, the statute contained no specific provision whereby a successor employing unit might suc *17 ceed to the merit rating of its predecessor. In 1943, the Legislature amended section 14 by inserting a new subsection (c) which specifically authorized the transfer of merit ratings to successor employing* units and set forth four defined classes of cases in which such transfers of merit ratings would be made. St. 1943, c. 534 § 1A. However, in the case of Packard Clothes, Inc. v. Director, Div. of Employment Sec., 318 Mass. 329, the Supreme Judicial Court ruled that such transfers of merit ratings in appropriate cases were authorized by the statute in effect before the 1943 amendment, and pointed out that that amendment was “intended to clarify the subject matter and to assure transfer of merit ratings in the particular cases specified ...” The Court there held that a corporation owned and managed by an individual, which had taken over and continued to operate, without change in the nature of the business, the employing enterprises formerly owned and operated by the same individual, was entitled to the merit rating which had been assigned to him, even though that particular situation did not come within any of the* classes specified in the 1943 amendment.
In 1945, the Legislature further amended section 14 by substantially reenacting sub-section (c) as inserted in 1943, and by adding thereto three additional classes of cases in which merit ratings would be transferred to successor employing units. St. 1945, c. 516. While this statute was enacted after the defendant had fixed the rate of contributions payable by the plaintiff in 1944, and after the* plaintiff had paid the amounts here involved, the amendment is material to this case, since it was expressly made applicable to the determination of employers’ contribution rates for certain prior years, including 1944. The following provisions of the 1945 amendment are pertinent to this case:
*18 “(c) For the purposes of this section, when the employing enterprises of an employer or employers are continued solely and without interruption by an employing unit not previously subject to this chapter, the contribution record of the predecessors and the record of workers' benefit wages which were charged or would have been charged to the predecessor employer or employers, if no change in legal identity or form had occurred, shall cease to be the records of the predecessor employer and shall become part of the records of the successor employing unit in determining his benefit wage ratio in the following cases: (1) Where two or more employers are consolidated into a new employing unit . . . (7) Where a corporation so succeeds to the employing enterprises of an individual, partnership or other corporation, without substantial change in the nature of the business. Provided, . . . that for the balance of the calendar year in which any such change of identity or form occurs the contribution rate of the succeeding employing unit shall be the rate applicable to the predecessor or predecessors except under item 1 above when for the balance of such year the rate shall be two and seven tenths percent. ’ ’
The defendant maintains that the plaintiff in this case comes within the scope of Item 1 of sub-section (c), above, and that the statute therefore requires that the plaintiff’s contribution rate be set at 2.7% for the remainder of the calendar year in which the merger occurred. The plaintiff contends that on the agreed facts with respect to its continuance of the business of each of its predecessor employers, without substantial change in the nature of such business, it comes within the scope of Item 7, and is therefore entitled to the benefit of its predecessor’s merit rating of .5% for the balance of the year 1944; and that even if not strictly within the provisions of Item 7, the plaintiff is entitled to succeed to that merit rating upon a proper construction of the statute as a whole, under the doctrine of the Packard case.
*19 It may be conceded that upon a strictly literal reading of the statute, the plaintiff would appear to come within the description contained in Item 1, which, applies “where two or more employers are consolidated into a new employing unit.” However, “we must look beyond the letter of the statute where a literal construction would be inconsistent with the legislative intent.” Price v. Railway Express Agency, Inc., 322 Mass. 476, 484; Lehan v. North Main Street Garage, Inc., 312 Mass. 547, 550. It is well settled that the intent of a statute is to be ascertained from all of its terms and parts and that it should be so construed as to make it an effectual piece of legislation, in harmony with common sense and sound reason. Tilton v. Haverhill, 311 Mass. 572, 577-8; Johnson’s Case, 318 Mass. 741, 746; Knapp v. Amero, 298 Mass. 517, 522.
In our opinion, a literal construction and application of the statute to the facts in this case would do violence to the true meaning and purpose of the legislation. The agreed facts show that while technically two corporations were merged with the plaintiff on June 30, 1944, the situation for all practical purposes was one in which the plaintiff corporation succeeded to the employing enterprises of a single “other corporation [Holtzer-Cabot], without substantial change in the nature of the business” within the scope of Item 7 of sub-section (c). In such a case, we may properly disregard the niceties of corporate form and consider substance rather than form in order to carry out the legislative intent. Packard Cothes, Inc. v. Director, Div. of Employment Sec., 318 Mass. 329, 335. The effect, in Massachusetts, of the simultaneous acquisition of Micro with its two employees, was so trivial as to have no significance in the determination of the rate of contribution required to be made by the plaintiff. This fact was evidenced by the defendant’s assignment of the .5% rate to the plain *20 tiff for the year 1945, for all of its Massachusetts employees, including’ those in the Micro Division. If the plaintiff were to be deprived of the benefit of the .5% merit rating- with respect to wages paid to its 2,000 employees of the HoltzerCabot Division merely because the plaintiff also took over Micro and its two employees, that would be a clear instance of a large dog being wagged by a very small tail. Thus, upon such a construction and application of the statute, the plaintiff’s liability for contributions on account of wages paid to its 2,000 employees would be increased by more than $54,000.00 simply because the plaintiff also paid wages totalling $3,451.20 to two other employees, on which its contribution at the 2.7% rate would be only $93.18. We cannot believe that the Legislature intended any such grotesque result, or that we are required to construe the statute in such manner as to sanction it.
The trial court properly denied the plaintiff recovery of interest on the amount of its over-payments. Prior to 1941, the pertinent statute expressly authorized recovery of interest by the employer in an action such as this, (G. L. (Ter. Ed.) c. 151A, § 8, as appearing in St. 1937, c. 421, § 1; Griswold v. Director, Div. of Employment Sec., 315 Mass. 371, 374) but no comparable provision was included in the Employment Security Law enacted in 1941 to supplant the earlier legislation. Not only did the Legislature omit such a provision from the present law, but it included several other provisions which clearly indicate an intention to preclude recovery of interest in an action against the Director. Thus, section 18 in terms permits the recovery of interest by the Director in an action against the employer, but it contains no comparable provision for interest to be awarded in actions by employers against the Director. Also, section 15 of the present law confers upon the Director the right to recover interest on overdue contributions from *21 employers, but specifically provides that an employer’s recovery in proceedings under that section shall be limited to the excessive amount paid by him, without interest or costs. We. do not believe that the Legislature intended to forbid recovery of interest by an employer seeking to recover over-payments by proceeding under section 15, and at the same time to permit recovery of interest under identical circumstances by a similar employer who brings suit under section 18. Report dismissed.